

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bascom Giles
Commissioner, General Land Office
and Chairman, Board for Lease of
Prison Lands
Austin, Texas

Dear Mr. Giles:

> Opinion No. O-1167
> Re: Effect of Senate Bill 53,
> Acts 1939, upon primary term
> of oil and gas lease executed
> by Board for Lease of Texas
> Prison Lands to Howard C.
> Meyer and status of said lease.

On July 31, 1939, you requested our opinion on the above referred to and related questions. We quote from your letter as follows:

"In your Opinion No. O-940 which you furnished us on June 8, 1939 you advised us that oil and gas lease executed by the Board for Lease of Texas Prison Lands to Howard C. Meyer upon lands situated in Brazoria County, being part of the Darrington Farm, A. McFarland League, 821.75 acres, had expired and terminated on April 16, 1937 by reason of Lessee's failure to produce oil or gas from said land by that date.

"In view of the action of the last Legislature in enacting Senate Bill No. 53, will you now please advise us whether or not in your opinion such legislation has the effect of making valid extension of the oil and gas lease in

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Bascom Giles, Page 2

question. It appears to us that such legis-
lation was clearly intended to have the effect
to extend or to ratify and confirm for a
period of five years leases of the character
of the Howard Meyer lease.

"Also please advise us as to the status
of a lease where oil and gas in paying quan-
tities is discovered within the primary term
of the lease, but thereafter production ceases
for a period of ninety days or more because
of the collapse of casing or for other reasons
beyond the control of the operator.

"Should you entertain any doubt as to the
validity or constitutionality of such measure
please cover such question.

"It would be appreciated if a departmental
conference opinion may be given the Board on
these matters."

The above quoted request for an opinion was
made subsequent to the last meeting of the Board for Lease
of Texas Prison Lands at which meeting the question as to
the status of the above referred to lease was discussed
by the Board, of which Board the Attorney General is a
statutory member. At such meeting of the Board, state-
ments were made by representatives of Hanman Exploration
Company with respect to the efforts that had been made to
develop the lease in question for oil and gas. The
Board passed a resolution requesting the Attorney General
for an opinion upon the status of the oil and gas lease
in question in the light of the statements made at the
meeting of the Board as well as the facts stated in the
above quoted letter.

In our opinion, No. 0-940, written to you on
June 8, 1939, we, in effect, held that the provisions of
the lease executed by the Board are governed by and subject
to the provisions of Chapter 13, Acts 1930, 41st Legisla-
ture, 4th Called Session, which statute furnished the
authority for the execution of the lease by the Board.
In construing such statute we held that the effect of the
statute was to authorize a lease for a primary term of
three years only, and that a lease executed under the

provisions of such statute would expire upon the expiration of three years after its date, unless oil and gas had been produced in paying quantities prior to the expiration of the three year primary term.

As we have heretofore stated to you, the effect of Senate Bill No. 53 of the 46th Legislature, Acts 1939, was not considered or discussed in formulating our opinion No. O-940, for the reasons set forth in that opinion.

After further consideration of Opinion O-940, we now reaffirm the same and hold that in such opinion Chapter 13, Acts 1930, 41st Legislature, Vernon's Annotated Statutes, Article 6203a was properly construed as authorizing the Board for Lease of Prison Lands to issue oil and gas leases for primary terms of three years only rather than for primary terms of five years.

Your above quoted request asks specifically for our opinion as to the effect of Senate Bill No. 53 upon the oil and gas lease in question. Section 2 of Senate Bill No. 53, Acts 1939, 46th Legislature, provides as follows:

"Any lease providing for a five year primary term and heretofore entered into by the Board created by Senate Bill No. 29, Chapter 13, Acts Fourth Called Session Forty-first Legislature (Art.6203a), shall not be considered terminated by failure to produce oil or gas within three years from the date of such lease, and any such lease is hereby confirmed and validated in so far and only in so far as failure to produce oil or gas within three years from date thereof is concerned; and any such lease shall be in force and effect for five years from its date if otherwise in good standing and all other terms and conditions of such lease and the law applicable thereto have been heretofore and are hereafter met and carried out."

The oil and gas lease in question, dated April 16, 1934, in paragraph 2 provides as follows:

"It is agreed that this lease shall remain in full force and effect for a term of five (5) years, from the date hereof, and as long thereafter as oil, gas or cashing-head gas, or either of them, is produced from said land in commercial quantities, by the Lessee."

It thus appears that Senate Bill 53 clearly has application to the oil and gas lease in question, said lease having been executed prior to the effective date of Senate Bill 53 and said lease having expressly provided for a five year primary term.

The question is thus presented as to whether or not Senate Bill 53 is constitutional. In this connection, it is material to point out that the lease on its face purports to be for a five year primary term and that the delay rentals as provided for in the lease have been paid by the lessee and accepted by the state for a period of five years; however, the law as it existed on the date of the execution of this lease authorized the Board for Lease of Texas Prison Lands to execute a lease for a primary term of three years only. Could the Legislature thereafter constituionally ratify and confirm the Board's act in executing an oil and gas lease for an originally unauthorized primary term of five years?

A careful examination of the authorities on this question has impelled us to the conclusion that the Legislature has not exceeded constitutional limits in enacting Senate Bill 53.

In Armstrong v. Walker, 73 S. W. (2) 520, a recent decision by the Supreme Court of Texas, it was stated:

"It is settled as the law of this State - in fact, it is the universal rule - that what

the Legislature could have authorized
in the first instance, it can ratify, if
at the time of ratification, it has the
initial authority to authorize."  Ander-
son County Road District No. 8 v. Pollard,
116 Tex. 547, 296 S. W. 1062, 1065 and
authorities there cited.

Other decisions which announce and reaffirm
the above quoted rule are:

Anderson County Road District No. 8 v.
Pollard, 116 Tex. 547, 296 S. W. 1062; Tom
Green County v. Moody (Sup. Ct.) 289 S. W. 381;
Nolen County v. State, 83 Tex. 182, 17 S. W.
832; State v. Bradford, 50 S. W. (2) 1065;
Charlotte Harbor & Northern Ry. Co. vs. Welles,
260 U. S. 8, 43 Sup. Ct. 3, 67 L. Ed. 100;
Kansas City Southern Ry. Co. v. Road Improve-
ment District No. 3, 266 U. S. 379, 45 S. Ct.
136, 69 L. Ed. 335; Anderson County v. Santa
Anna, 116 U. S. 356, 6 S. Ct. 413, 29 L. Ed.
633; Bolles v. Brimfield, 120 U. S. 762, 7
S. Ct. 736, 30 L. Ed. 786.

In Anderson County Road District No. 8 vs.
Pollard, supra, the Supreme Court of Texas, in deter-
mining whether or not the Legislature could consti-
tutionally ratify and validate an illegal bond issue, stated:

"The general and established rule is,
what the Legislature could have authorized
in the first instance it can ratify, if at
the time of ratification it has the initial
authority to authorize."  Citing cases.

All of the authorities in this State are thus
in accord in holding that the above quoted rule is firmly
established as a rule of decision in Texas.  Although
there are other decisions by the Texas Courts which make
exceptions to the above stated rule in certain situations,
no such situation is presented in the matters inquired
about by you.  It remains for us to determine whether or
not such rule has application to the circumstances under

examination so as to validate and make constitutional Senate Bill 53.

We believe no serious question can be raised as to the existence of the Legislature's power and authority on the date of the execution of the lease in question, to provide, if it had so desired, that any lease executed by the Board for Lease of Texas Prison Lands should be for a primary term of five years rather than three years. No provision is found in the Constitution now, nor was there any provision in the Constitution upon the date of the execution of the lease which would prohibit a five year lease.

The Board, purporting to act under the authority conferred by Chapter 13, Acts 1930, issued a lease which provided for a five year primary term rather than a three year primary term, and rentals were paid thereunder for a period of five years. The Legislature, in 1939, by passage of Senate Bill 53, clearly intended and attempted to validate the action of the Board in issuing a five year rather than a three year lease. This, under the above quoted authorities, we believe, the Legislature had the power to do. Senate Bill 53 simply confirms and ratifies an originally unauthorized act of a properly constituted board so as to validate that which the Legislature could initially have authorized. The full consideration and rentals provided for under the lease executed by the Board have been paid by the lessee and accepted by the State in the exact manner provided for by the lease. Thus, no question arises as to an unconstitutional gift or disposal of State land by the Legislature. We must, therefore, conclude that Senate Bill 53 is a constitutional exercise of the Legislature's power to confirm and ratify an act of the Board for Lease of Texas Prison Lands in issuing the original oil and gas lease here involved, and that such statute operates to extend the primary term of the lease in question until mid-night, April 16, 1939.

You further request our opinion as to the present status of a lease "where oil and gas in paying quantities is discovered within the primary term of the lease, but thereafter production ceases for a period of

90 days or more because of the collapse of casing or for other reasons beyond the control of the operator."

According to the statements made by the lessee to the Board, the drilling of a well on the lease in question was begun on March 6, 1939, and continued until April 10, 1939, when, at a depth of 8887 feet, a sand was discovered which flowed an estimated two million cubic feet of gas per day and a substantial volume of 45 degree gravity oil. The well flowed continuously for 6 to 8 hours after which about 40 feet of the casing in the bottom of the well collapsed. Lessee stated that he immediately thereafter began operations to recondition the well, trying to ream under the casing, which effort continued for approximately one month. Failing in this effort, the lessee stated that he plugged back to a sand at a depth of approximately 8500 feet, which sand had previously been cored, and made a completion in this sand at a depth of 8515 feet. This completion occurred on May 12, 1939. The well had an initial flow of approximately 24 barrels per hour on a 1/4" choke and royalty on such oil was paid to and accepted by the General Land Office. The lessee stated that after 18 hours oil flow, the flow was stopped by water encroachment and that efforts were made to stop the water flow with cement. After cement was applied, the casing was reperforated four separate times, but that the lessee was unable to restore the flow of oil from this sand. The lessee stated that he then concluded to side-track the casing in an effort to secure production from the 8887 foot level; that thereafter the 8887 foot sand was encountered at a depth of 9,025 feet; that the well was carried 700 or 800 feet in the Vicksburg sand; that an immense downpour of rain, beginning on July 10, 1939, caused the hole to slump or cave in, ruining all of the heavy drilling mud and making it inadvisable to attempt to recondition the original well, it being more economical to move to another location and begin the drilling of a new hole. Lessee stated that on July 15, 1939, he received notice from the Board that it would hold a meeting on July 20, 1939, at which time the status of the lease would be considered and that further development had been delayed awaiting the outcome of this hearing. Subsequent to such meeting of the Board, the Board requested this opinion as to the present status of this lease.

In considering the question as to whether or not the lease in question has terminated in the light of the statements set forth above, we must first state that it is

not within our province to decide whether or not such
statements regarding the claimed discovery of oil and the
subsequent claimed diligence in drilling and attempting
to develop the lease in question, state the correct
facts as they actually occurred.  In our opinion the
Board for Lease of Texas Prison Lands is the proper au-
thority to make a primary determination as to the actual
facts which exist with reference to the time of discovery
of oil or gas, and the diligence thereafter exercised by
the lessee in attempting to produce the same.  For the
purposes of this opinion only, we assume that a correct
statement of the facts has been made by the lessee.  Making
such assumption, it appears that the lessee, within the
five year primary term of the lease, discovered and pro-
duced oil and gas in paying quantities; that following
6 or 8 hours of such production, the casing in the hole
collapsed; that the hole was plugged for a distance of
approximately 447 feet and the well was then completed,
on May 12, 1939, as a producer of oil and gas in paying
quantities at a depth of 8300 feet; water encroachment
made it impossible to continue this latter production for
more than 18 hours, the hole being ruined by unprecedented
floods.

Assuming that oil was discovered and produced
in paying quantities on April 16, 1939, under the terms
of the lease, lessee became entitled to hold such lease
for as long thereafter as oil and/or gas was produced in
paying quantities.  The question thus presented is as to
the effect of a temporary cessation of production caused by
collapsed casing, floods and other matters beyond the con-
trol of the lessee.

The law in Texas is apparently well settled to
the effect that a temporary cessation of production caused
by circumstances over which lessee has no control does
not terminate or forfeit the lease if the lessee in good
faith uses reasonable diligence to resume production.  The
question under consideration was decided in Scarborough
v. New Domain Oil & Gas Company, 276 S. W. 331 (Writ dis-
missed) where the Court said:

> ". . . The question presented is:  Did the
> temporary cessation of production in paying
> quantity of both gas and oil, under the facts
> disclosed by the record, terminate the mineral
> lease?  The facts disclosed by the record are
> the efforts made by appellees, in good faith,

to resume gas production, and the expenditure of large amounts of money in their effort to resume gas production immediately after the casing collapsed, and continued such effort until the oil well was brought in on July 2d, and then resumed their effort at gas production by starting another well and continuing work thereon until gas was produced in the second well. . ."

" . . .We have concluded that, under the terms and provisions of the mineral lease as found in the record, where oil was produced in paying quantities within the five-year period, and the cause of cessation of production was thereafter necessarily unforeseen and unavoidable, and where the lessees in good faith used reasonable diligence to resume production, and at great outlay of money, and did, within a reasonable time, in view of the conditions disclosed by the record, resume production, a forfeiture for temporary cessation of production without fault of lessees should not be allowed as a matter of law. Such we believe to be a reasonable construction of the lease. . ."

In Texas Pacific Coal & Oil Co. vs. Bratton, 239 S. W. 688, the Court, in speaking of a temporary cessation of production of oil, says:

"Having discovered it in such quantities, and with reasonable prospects of further successful development, the lessee, in common fairness and justice, was entitled to a reasonable length of time within which to continue the development work in order to reap some reward for the labor and expenses incurred, which would also be attended with profit to the plaintiff. And such we believe to be a reasonable construction of the terms of the lease. The following authorities, cited by appellant, accord with these views, and some of them, at least, involved the

construction of leases of similar terms to
those of the lease in controversy in the
present suit; Eastern Oil Co. v Coulehan,
65 W. Va. 531, 64 S. E. 836; South Penn.
Oil Co. v. Snodgrass, 71 W. Va. 438, 76 S. E. 961, 43
L. R. A. (N. S.) 848; Ohio Fuel Oil Co. v. Greenleaf,
84 W. Va. 67, 99 S. E. 274; Roach v. Junction Oil
& Gas Co. (Okla. Sup.) 179 Pac. 934."

In Wisconsin-Texas Oil Co. vs. Clutter, 268 S. W.
921, the Commission of Appeals of Texas said:

"The law is well settled that a temporary
cessation of developments or operation under an
oil and gas lease does not, as a matter of law,
constitute an abandonment. Fisher v. Crescent
Oil Co. (Tex. Civ. App.) 178 S. W. 905; Hall
v. McClesky (Tex. Civ. App.) 228 S. W. 1004;
Marnett Oil & Gas Co. v. Munsey et al (Tex.
Civ. App.) 232 S. W. 867; Jacobs v. Robinson
et al (Tex. Civ. App.) 241 S. W. 241; Munsey et
al v. Marnet Oil & Gas Co., 113 Tex. 212, 254
S. W. 311."

The above cited authorities together with others
which need not be cited in this opinion, establish the
rule in Texas that an oil and gas lease for a definite
primary term and "as long thereafter as oil and gas is
produced in paying quantities", is not ipso facto termi-
nated by a temporary cessation of production occurring
through circumstances or reasons beyond the control of
the lessee after oil or gas in paying quantities is dis-
covered and produced during the primary term of the
lease, provided the lessee thereafter in good faith uses
reasonable diligence to re-establish production, and
succeeds in re-establishing production within a reasonable
time.

Accordingly, you are advised that, in our opinion,
the oil and gas lease referred to in your request did not
terminate by virtue of said cessation of production from
said lease, provided, however, that such cessation of
production is temporary and was caused by forces or cir-
cumstances beyond the control of the lessee, and provided

the lessee, in good faith, uses reasonable diligence to re-establish production from said lease, and within a reasonable time thereafter does re-establish production.

The existence of all of these facts, together with the question of whether or not oil or gas in fact was produced from the land in question prior to the expiration of the five-year primary term, are matters which must be determined by the Board for Lease of Texas Prison Lands from the evidence presented to them and from their knowledge of the facts.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Robert E. Kepke*

Robert E. Kepke

REK:BT

APPROVED OCT 30, 1939

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS


APPROVED OPINION COMMITTEE
BY PWB