## CHARLESTON

RIEDEL *v.* WHEELING TRACTION COMPANY.

Submitted January 21, 1908.    Decided February 11, 1908.

1. PUBLIC STREET CROSSINGS—*Pedestrians and Others—Duties as to.*
   The duty, on the part of pedestrians, drivers of vehicles and others, having occasion to use a public street crossing over which a street railway is operated, to look and listen for approaching cars, is imposed by the general rule, requiring them to exercise .reasonable care and prudence in using such crossing. (p. 526.)

2. SAME—*Negligence Per Se—What Is.*
   Failure, under such circumstances, to make use of the faculties of sight and hearing, is negligence *per se*, if it appears that a reasonable and fair use thereof would have disclosed the danger and enabled the party to have avoided it. (p. 527.)

3. SAME—*Duties of Persons About to Cross.*
   Neither haste nor mental preoccupation, on the part of a person using such a crossing, will justify or excuse his failure to make a reasonable effort to ascertain whether it is reasonably safe to attempt to cross. He must have in mind the matter of effecting the crossing. (p. 528.)

4. SAME—*Contributory Negligence.*
   When the facts, clearly proven or admitted, are such that a person injured at such a crossing must have seen and heard the approaching car in. time to have enabled him to avoid the injury, if he had looked and listened, his protest that he did not see or hear it goes for naught. (p. 529.)

5. SAME—*Pedestrians and Street Car Company—Rights Of.*
   Though a pedestrian has an equal right with a street railway company to the use of a public crossing, he cannot enter thereon without taking any precaution for his safety, merely because, at

the instance of his entry, it is not actually occupied by a car; for, in view of physical difference between the parties, this would give him a superior right.   (p. 529.)

6.   SAME—*Contributory Negligence.*

One who attempts to cross a street at a public crossing ahead of a street car, when the danger is so obvious that reasonable men could not differ in opinion about it, assumes the risk of injury, and, in the absence of proof that the car could have been stopped in time to have prevented the injury, after the servants in charge of it had perceived the danger, is guilty of contributory negligence as matter of law, and thereby precluded from recovery of damages for his injury.   (p. 530.)

7.   SAME—*Injury — When Damages Not Recoverable.*

In using such crossings, it is incumbent upon both parties to exercise care, and when it is apparent that both have been negligent, and their negligence is concurrent or coincident, so that the negligence of neither can be regarded as having been the proximate cause of the injury, no damages can be recovered.   (p. 530.)

8.   SAME—*Injury—Concurrent Negligence—Damages Not Recoverable.*

A street railway company cannot enforce its right of passage over a public crossing, by running its cars over a person who makes a wrongful or negligent use thereof, and is bound to make a reasonable effort to prevent injury to such person, after having discovered his danger; but, if the negligence of such person is obvious, and it appears that the servants of the company exerted themselves to avoid injury to him after having seen his danger, and injury nevertheless resulted, the injured party cannot recover, although the company was guilty of negligence, through its servants, in having approached the crossing at an undue rate of speed before the danger was discovered.   In such case, there is concurrent negligence in both parties.   (p. 531.).

9.   SAME—*Injury— Vital Question is Relative Negligence, Not Relative, Right.*

A pedestrian, seeing negligence, on the part of the servants of a street railway company, in running its cars to a public crossing, or in a position in which he must have seen it, as well as the danger in attempting to cross ahead of it, if he had used his faculties of sight and hearing, cannot justify or excuse his assumption of an obvious risk of injury, in attempting to cross, on the ground that his right to the use of the crossing is equal to that of the railway company.   The vital question under such circumstances, is relative negligence, not relative right.   (p. 531.)

Appeal from Circuit Court, Marshall County.

Action by Louisa Riedel against the Wheeling Traction

Company. Verdict for $15,000 in favor of plaintiff was set aside by the court, and of this action Louisa Riedel complains.

*Affirmed.*

J. HOWARD HOLT, and PARSONS & BROWN, for plaintiff in error.

ERSKINE & ALLISON, C. C. NEWMAN, and WM. A. DUGGAN, for defendant in error.

POFFENBARGER, PRESIDENT:

The circuit court of Marshall county set aside a verdict for $15,000.00 in favor of Louisa Riedel, against the Wheeling Traction Company, for damages 'resulting from injuries sustained by her on a street crossing in the city of Benwood, by the alleged negligence of the company, in the operation of one of its electric cars, on the ground of contributory negligence, and of this action, on the part of the court, she complains.

The schedule requires the running of the car at a rapid rate of speed. The view of the track was unobstructed for a considerable distance north of the crossing at which the plaintiff was hurt, and the car was approaching from that direction when she attempted to cross the track. It is not denied that she could have seen the approaching car before she reached the crossing, but she testifies that she looked in that direction after having left the sidewalk and before attempting to cross, but did not see it. As she was then within a few feet of the track, the car was necessarily so near, that she could have seen it, and would have done so, had she looked for it, with any degree of care. She had walked down the sidewalk for some distance in the direction opposite to that from which the car was approaching; and, having come nearly to the corner, left the sidewalk and went diagonally across the street to the intersection of the railway track with the cross street, known as Sixth Street. The motorman saw her before she stepped on the track and was under the impression that she had not seen the car and was not looking for it. Just as she was passing off of the track, having crossed it, her clothing was caught, and she was thrown on the track ahead of the car, which passed over

one of her legs, cutting it off, or was thrown down and dragged under it with the same result.

The evidence seems entirely sufficient to warrant the conclusion that the jury may have properly found negligence on the part of the defendant. Witnesses testify that the car was running at a high rate of speed and not under control, when it came to the crossing, and circumstances stated by some of them tend to sustain this view. They say it struck the plaintiff with such force as to pitch her ahead of it a distance of about fifteen feet, and ran about sixty feet after striking her, despite the efforts of the motorman to stop it. Another circumstance relied upon in this connection is the finding, on Sixth Street, at a considerable distance from the crossing, one of her slippers, as if it had been thrown from her foot by the violence with which she is said to have been pitched or thrown forward. One witness says he saw the car crossing the street at what he believes to have been a speed of twenty miles an hour. Another, residing on Mc-Mechen Street, at some distance above the crossing, says she saw it passing her house at a rapid rate. There is evidence to the contrary. A witness for the defendant says he was standing in the door of a house on Sixth Street some distance from McMechen, on which the railway is, and, hearing the sound of the gong and the approach of the car, looked diagonally across both streets, past a house that stood on the corner, and saw both the plaintiff near the track and the car as it came in sight, and that the speed of the car was slackened and the motorman turning his brake in an attempt to stop it, and, at the same time, sounding the gong. According to this witness, the motorman was giving warning and attempting to stop the car, but the plaintiff attempted to cross the track, and continued to do so until she was struck. The motorman testified as follows: "When I got coming to Sixth Street I saw Mrs. Riedel start across the street toward Mr. Dolan's store, and before I saw her she was out in the street. I hadn't saw her on the sidewalk, and I started to apply the brakes right away. I saw that she didn't seem to see the car, and I tried to stop the car at once, but before I could stop it, she got out and started to walk across the track, and I kept ringing my gong all the time from the first time I saw her, and she got across in

front of the car, across the track, and I thought she was out of harm's way at that minute, and her leg was just in such a step that one leg was forward, clear out away from the track,—I think it was her right leg,—and the left one was back just far enough for the edge of the fender to catch her like and start to upset her. Of course that throwed her down, and the skirt,—I think it was her skirt, caught in the fender. That held on there for a second, as far as I could see, and from that on I don't know what happened." The record contains much evidence, bearing on the conduct of the defendant's employes in charge of the car, but enough has been stated to show that the question of negligence on its part was one for the jury.

It is hardly necessary to say that, though the defendant was negligent, and its negligence was operative in producing the injury, contributory negligence on the part of the plaintiff would bar recovery. There was evidence tending to show such negligence on her part. It seems to be admitted in the argument that, if the jury had found for the defendant instead of the plaintiff, the verdict would be conclusive, in the absence of any erroneous rulings of the court in the course of the trial. But it is insisted that the evidence of contributory negligence is not strong enough, or does not make such a conclusive case, as justified the court in declaring it. In other words, it is said to have been a question for the jury. She came on the sidewalk at some distance above the crossing and walked down to the corner, and thence diagonally across the street to the railway track. Along the sidewalk there were some trees, which may have obstructed the view of the motorman, although the accident happened at a season of the year when the trees were bare of foliage. The motorman says he did not see her until after she had left the sidewalk, at a point not far from the track. The schedule, under which the car was operated, required a high rate of speed, and it does not appear that any ordinance of the city restricted the speed. The crossing was a public one, used at times by a considerable number of people, but the track was straight so that the servants of the defendant could tell from a distance whether there were people on the crossing or not. On this occasion, it was entirely free from pedestrians and vehicles when they came in view of it, nor

were any persons or vehicles seen on the street in the neighborhood thereof. The plaintiff testifies that, after having left the sidewalk and come to a point about midway between it and the track, she looked up the street but did not see the car; but she undertakes to justify her failure to see it by saying she did not look straight up the street, but diagonally across it so that she could see a red house standing some distance above on the opposite side, and then it is ·shown, in this connection, that the car, although on the street at the time, was out of the line of her vision. If her position was such as she says it was, the car must have been not far distant, or else she must have walked very leisurely across the track. The uncontradicted facts make it absolutely certain that she could have seen the car without any unreasonable exertion. It would have been necessary for her only to have looked straight up the street instead of diagonally across it. The motorman says he does not think she saw it at all and whether she looked for it, he does not know. Apparently, she was crossing the street heedlessly and without looking. She says she did not hear the bell or the noise of the car. Living in the vicinity of the crossing, she must have been aware of the rapidity with which the cars ran on that street.

The duty on the part of a pedestrian or other person to look and listen before attempting to cross a railway track on a public crossing, to the end that he may avoid danger, is not open to question. This is obviously included in the general rule, imposing upon the traveler the exercise of prudence and care in effecting such crossing. White's Supp. to Thomp. Neg., sections 1441, 1442, citing a large number of decisions. The rule is one of universal application, but in some states, it is held not negligence *per se* to attempt to cross without having made such use of the senses and faculties as would have enabled the party to discover the danger. In these latter states, the duty to look and listen exists, but it is always left to the jury to determine whether, under the peculiar circumstances of the case, it was necessary. In this state; failure to do so is negligence *per se* in the case of steam railroads, and *Ashley* v. *Traction Co.*, recognizes it in the case of street railways, by holding that, at street crossings, neither party has superior right to the other and

528      Riedel v. Traction Co.      [63

each must exercise his right in a reasonable and careful manner, having due regard to the rights of the other, and that the traveler, in approaching a street crossing toward which a car is approaching must stop and avoid collision if he can most easily and readily adjust himself to the exigencies of the case. To hold that a pedestrian may cross a track on seeing it unoccupied by a car, and without looking for approaching cars, would give him the superior right to the crossing, for it would impose upon the railway company the entire burden of preventing injury and accident. Every crossing would be made at the peril of the railway company. Moreover, the traveler is bound to make a fair use of his faculties, according to the circumstances. White's Supp. Thomp. Neg., section 1444. *Boehmer* v. *Pittsburg &c. Co.*, 194 Pa. 313, applies this rule, although the injury in that case did not occur at a street crossing. However, that does not affect the principle. When the duty to use the eyes or ears exists, it necessarily follows that a fair and reasonable use of them must be made. *Stafford* v. *Chippewa &c. Co.*, 110 Wis. 33, involved a claim for damages for injury on a crossing, and it was there held that the traveler was bound to see what was perfectly obvious. His protest that he did not see, or was not conscious of, danger, when it was so apparent that his ignorance of it cannot be attributed to anything but his neglect to use his faculties, goes for naught. Courts will not allow a verdict to stand upon it. *Daugherty* v. *Detroit &c. Ry. Co.*, 118 Mich. 209, holds as follows: "A pedestrian is, as a matter of law, guilty of contributory negligence, precluding a recovery for injuries received from being struck by a street car, where, after looking up and down the track when distant therefrom some 12 ft., and failing, because his view was obstructed by a covered wagon standing backed up to the curb, to see the approaching car, which would have been visible to him had he looked again when within two or three feet of the track, he proceeded directly in front of such car." To the same effect, see *Russell* v. *Minneapolis &c. Co.*, 83 Minn. 304. In *Ries* v. *St. Louis Transit Co.*, 77 S. W. 734, (Mo.), the court held as follows: "Where plaintiff's decedent could have seen an approaching street car, by which he was killed at a street crossing, at all times after starting to cross the street, but attempted to cross in

front of the car without looking or paying any attention thereto, he was guilty of such contributory negligence as precluded recovery. Where the negligence of plaintiff's decedent, who was killed by a street car at a crossing, was not only concurrent with that of the motorman, but was contemporaneous and coincident with his injury, no recovery could be had under the humanitarian doctrine." Numerous other cases to the same effect will be found cited in the notes to sections 1444 and 1445 of White's Supp. Thomp. Neg.

That pedestrians and the drivers of vehicles have an equal right to a street crossing, with a street railway company, as held in *Ashley* v. *Traction Co.*, does not relieve such persons from the exercise of prudence and care, involving the use of their senses and faculties, in crossing the track, nor qualify or limit the principle barring recovery for contributory negligence; and what amounts to contributory negligence, as matter of law, depends upon the peculiar circumstances of each case. *Ashley* v: *Traction Co.* enunciates the doctrine that no general rule for the government of all cases can be prescribed. The pedestrian, as well as the servants in charge of the car, must have regard to the conditions and circumstances prevailing at the time. A pedestrian has the advantage of power to control his actions instantly. By reason of its weight, velocity and momentum, a street car cannot be so controlled. This fact, a person approaching a crossing, must take into consideration, and so must the court, upon the inquiry as to whether he has been reasonably careful. A crowded street or crossing imposes the duty of greater care on the part of both parties than an empty, unobstructed street or crossing, where nothing stands in the way of full knowledge of the situation nor places any restraint upon the free action of the parties. Neither will be required to assume all risks. Nor will an error of judgment, resulting in injury, preclude recovery. But, if it is apparent that the failure, on the part of the plaintiff, to exercise reasonable care under the circumstances, contributed to the injury, he is barred from recovery, however negligent the defendant may have been. He cannot recklessly and heedlessly stop on a railway track at a crossing, under a claim of right to do so, and, to compel

the servants of the company in charge of the car to do that which is impossible or unreasonable under the circumstances, even though he perceives negligence on their part in approaching the crossing at a high rate of speed and without having the car under such control as enables them to stop it instantly in order to prevent an accident. He must make a reasonable use of the crossing under the circumstances, although his right to its use is equal to that of the railway company.

Of course, we are not to be understood as saying a street railway company can enforce its right of passage by running over a person negligently standing or being on its track at a crossing or elsewhere, and obstinately refusing to obey the law of the road. However unlawful, unjust, wrongful and negligent the conduct of one party may be, the other cannot wantonly or deliberately inflict injury upon him. If it is in his power to prevent injury which would result from the negligence of the other party, he must do so, and it is incumbent upon him to exert himself to the utmost in that behalf. In many decisions, we have held that a pedestrian upon a steam railroad track elsewhere than at a public crossing, is a trespasser, having no right whatever to be there; but, at the same time, we say it is the duty of the railway company, after having seen such wrongful occupation and use of its track, to prevent any resultant injury to the wrong-doer, if it be in its power to do so. This is not law peculiar to steam railroads. It is applicable everywhere and in all relations involving questions of liability for injuries caused by negligence. It is the application of a rule making liability depend on the proximate, immediate cause of the injury. But it often happens that the negligence of both parties is concurrent, inseparable, so that it cannot be said one alone caused the injury; and when this condition of affairs is shown to have existed, neither party has a right of action against the other, for both are at fault. The proximate or immediate cause of the injury is then the joint action of both; and, when one sues the other, he is barred from recovery because, by his own negligent conduct, he contributed to the injury of which he complains.

In the application of these general principles to cases founded

upon injuries sustained at the hands of the street railway companies at crossings, the courts, with very few exceptions, hold that, although the servants of the railway company may have been running the car at an unreasonably high rate of speed under the circumstances, and so rendered their principal negligent in the operation of the car, a person desiring to use such crossing, and observing the negligence of the railway company, cannot thrust himself in front of the car and so bring injury upon himself, merely because he has an equal right with the railway company to the use of the crossing.   Moreover, if the danger was so apparent that he must have seen it, if he had exercised any care at all, or reasonable care, he will not be permitted to say that he did not see it. It is not only his duty to look for approaching cars, but to look in the right direction. Nor can he depend alone upon his eyes. When the circumstances are such as to make it plainly obvious, so much so that reasonable men could not differ about it, that if he had his own safety in mind while attempting to cross the track, he must have heard the approach of the car, he would be held to have contributed to his injury. It is as much his duty to listen as to look.

The authorities are almost uniform to the effect, not only that a pedestrian, seeing the approach of a car at a negligent rate of speed, cannot take possession of the crossing and expose himself to obvious danger, under the claim of his equal right to the use thereof, but also that his assumption of a plainly apparent risk in attempting to get across ahead of a car will bar recovery.   He is not held responsible to the extent of accuracy and certainty of judgment in this respect.   If the circumstances are such that he might reasonably have expected to be able to get over in safety, his attempt to do so will not preclude recovery.   But if there is risk in the attempt, so manifest as to put it beyond doubt, he is held to have assumed that risk; and this is nothing more than the application of another general principle of the law of negligence.   We apply it in cases involving injuries sustained in attempting to make use of obviously defective highways.   It applies as between master and servant. It is universally held that a servant assumes all the obvious and ordinary risks of the business in which he is employed.

Numerous illustrations might be given, but the general principle is so well known and recognized that further discussion of it is unnecessary.

A few cases, making application of these rules, are here noticed. In *Goldfranz* v. *Metropolitan Street Ry. Co.*, 85 N. Y. Supp. 667, a vehicle approached a crossing at a high rate of speed, and before attempting to cross, the traveler saw a car, but made no attempt to stop or avoid it, thinking he had time to get accross the track. There was no evidence that the motorman could have stopped the car after having seen the wagon on the track, nor that it was then at such a distance from the crossing as made it possible to have stopped it. The plantiff was held guilty of contributory negligence as matter of law. 89 App. Div. (N. Y.) 590. In *Stafford* v. *Chippewa &c. Co.*, 110 Wis. 331, the court held: "It is the duty of the traveler upon the street, in approaching a point where he desires to cross a street-car track, to look and listen for a coming car and to perform that duty when and where he will have reasonable opportunity to render his efforts in that regard effective, and it is as much his duty, as a matter of law, to see an approaching car which is in plain sight and in dangerous proximity to the crossing and not to negligently place himself in the way of it, as it is to look for the car; hence evidence that he performed the duty of looking, but did not see the actually approaching car, does not raise a question of fact." In *Tesch* v. *Milwaukee &c. Co.*, 108 Wis. 593, the court held as follows: "Before crossing a railway track, regardless of whether it be a steam or electric street railroad, a person should look both ways and listen for a coming car and perform that duty when and where it will be reasonably certain to effect its purpose; and diversion of attention, generally speaking, will not excuse the performance of such duty; neither will misconduct on the part of the railway company. An ordinary traveler upon a public street where a street car line is located and operated under a public franchise having no restrictions or regulations as to the manner of operating cars, has not the same right to go upon the track and compel the stopping of a car to enable him to pass over the track as the operator of the car has to delay his passage to enable the car to pass." In *Murry* v. *St.*

*Louis Transit Co.*, 108 Mo. App. 501, the plaintiff, after having seen the approaching car, drove leisurely across the track, thinking he had ample time in which to get over, but was struck and injured. On the theory that he had exercised care, and was guilty of nothing more than a mere mistake of judgment, in attempting to cross, he was permitted to recover. To the same general effect, see *Cain* v., *Worcester &c. Co.*, 182 Mass. 201, saying if a person, in attempting to cross is at fault only to the extent of a mistake of judgment, he is not guilty of negligence as matter of law. In *Heying* v. *United Railways &c. Co.*, 100 Md. 281, the plaintiff's case was withdrawn from the jury in view of the following facts: Driving a wagon on a dark morning, she came to the track of the railway and erroneously thinking she had time to cross ahead of a car which she saw approaching, attempted to do so and was injured. There was no evidence that the motorman could have stopped the car in time to have avoided the collision after having perceived her peril. In *State* v. *United Railways &c. Co.*, 97 Md. 73, the facts were very similar and the court took that case from the jury. In *Hilts* v. *Foote*, 125 Mich. 241, the injured party, driving a milk wagon at a speed of five or six miles an hour, came to the crossing without checking his speed, or looking for a car, until he was so near that he thought the safest way was to attempt to cross. Instead of stopping, he whipped up his horse, and, as his wagon was on the track, it was struck by the car. He had had ample time and opportunity to look for the car, stop and avoid the collision. The court below directed a verdict for the defendant and the supreme court affirmed the judgment thereon. A late and well considered case is that of *Rider* v. *Syracuse &c. Co.*, 171 N. Y. 139. Points 2, 4 and 5 of the syllabus read as follows: "The doctrine that a remote negligent act of the injured party does not bar a recovery for the injury is not applicable when one drives upon the track in front of an electric car approaching at a rate of from six to nine miles an hour and is fatally injured in the resulting collsion, where the motorman did not act willfully or carelessly, although the wagon was carried some distance along the track before it was overturned and the injuries inflicted, since the act of the driver and the con-

duct of the motorman were substantially concurrant so that the conduct of the injured party in driving upon the track cannot be separated from the injury itself. The act of a driver who negligently goes upon the track in full view of a rapidly approaching car is at least one of the proximate causes of a resulting collision, and the accident may be properly attributed to it and a recovery defeated, although the vehicle was carried some distance along the track before it was overturned and the injuries inflicted. The rule that a railroad company may not run a train into a person, though he is on the track through his own negligence, is not applicable where a driver attempts to cross the track diagonally when an approaching electric car is so near as to render the attempt dangerous." Under the circumstances, indicated in the foregoing quotation, disclosed by the evidence, a judgment of the lower court, founded upon a verdict, was reversed and the verdict set aside on the ground of contributory negligence on the part of the plaintiff's decedent.

The plaintiff here was a woman about 42 years old, healthy and sound, and in the full possession of all her faculties. The car must have been very close to the crossing when she stepped upon the track. We have been favored by counsel with a calcutation as to the probable distance, but it would be utterly impossible, by the aid of this memorandum or anything else, to arrive at any conclusion as to the exact distance. However, we may safely conclude that the car was near enough to have been both seen and heard. There is some argument in the brief as to how far the car could probably have been heard. While we do not judicially know how much noise a moving street car makes, nor how far it can be heard, we do know that, in a quiet deserted street, it can be heard for a considerable distance, in fact several hundred feet, and that the noise is sufficient to attract the attention of any one whose mind is not so preoccupied with something else as to exclude it. The authorities to which we have adverted amply justify the conclusion that the plaintiff was under a duty both to see and hear the car that struck her, and she cannot justify her failure to do so on the ground of haste in the pursuit of her own business or mental preoccupation with her affairs. The evidence relied upon to prove want of effort of the motorman to stop the car, after

having seen the danger, is negative in character, and hardly appreciable. The plaintiff does not know whether the brake was applied. She neither saw nor heard anything of the car until she was struck. The other evidence only tends to prove that the car crossed the street at a high rate of speed, a fact not inconsistent with effort to stop it. On the other hand, we have positive and direct evidence of a vigorous effort to stop it.

We think, therefore, the action of the trial court in setting aside the verdict was right, and the order complained of will be affirmed.

*Affirme*