HAZEL M. FIELDER, *Admx. v.* SERVICE CAB COMPANY

(No. 9071)

Submitted September 11, 1940. Decided October 8, 1940.

*Lilly & Lilly,* for plaintiff in error.

*John E. Jenkins* and *W. H. Norton,* for defendant in error.

RILEY, PRESIDENT:

Hazel M. Fielder, administratrix of the estate of Edward Fielder, deceased, who instituted this action against the defendant, Service Cab Company, a corporation, to recover damages for the alleged wrongful death of her decedent, prosecutes error to a judgment in defendant's favor based upon a verdict directed at the close of plaintiff's evidence in chief.

The declaration alleges several acts of negligence: That defendant did not drive and operate its taxicab in a reasonable, careful and lawful manner, and at a safe, legal and proper rate of speed; that defendant did not keep a

proper lookout for persons and vehicles; and that defendant failed to keep its taxicab under control.

To the ruling of the trial court in directing the verdict, plaintiff assigns two grounds of error: (1) defendant was guilty of negligence which was the proximate cause of decedent's death and decedent had committed no act of contributory negligence; and (2) if both decedent and defendant had been guilty of negligence contributing proximately to the fatality, plaintiff nevertheless is entitled to recover under the last clear chance doctrine.

Before directing a verdict in a defendant's favor, every reasonable and legitimate inference favorable to the plaintiff fairly arising from the evidence, considered as a whole, should be entertained by the trial court, and those facts should be assumed as true which the jury may properly find under the evidence. *Hambrick* v. *Spalding,* 116 W. Va. 235, 179 S. E. 807. This rule *ex necessitate* should guide us in stating the facts and inferences upon which this opinion is based.

The accident occurred about five o'clock in the afternoon of August 2, 1939, at the junction of Miller Road with route 52. After topping the hill on the outskirts of Huntington in traveling toward Wayne, route 52 makes a steep descent. Several hundred feet from the top of the hill, it curves to the right, and thence in a substantially straight line and a southerly direction to the bottom of the hill. Miller Road, a dirt road, joins the highway from the east, by a very sharp, or hairpin, turn, at a point on this descent approximately five or six hundred feet below the curve. This road parallels route 52 for some distance north of the junction as it comes up from a lower level to the junction point. Route 52 has a concrete pavement twenty feet wide, and a level berm twelve feet wide on each side.

Decedent, a youth past seventeen, was riding on a bicycle down the grade, contemplating turning off into Miller Road in the direction of a boy scouts' camp. Defendant's taxicab, occupied by a driver and two passengers, was also traveling south and approaching the intersection. As it reached the end of the curve, the pas-

sengers saw decedent riding his bicycle slowly near and toward the intersection. About the center of this intersection and the east edge of the paved portion of route 52 the taxicab collided with decedent and fatally injured him.

At the time the taxicab was proceeding down the hill in decedent's direction, it was going at a speed of not less than thirty-eight miles an hour. Two state troopers, who had investigated the scene and interviewed the driver, testified that the driver had admitted a speed of thirty-eight or forty miles an hour. Norvell and James Maynard, passengers in the car, testified it was going at thirty-eight or more miles an hour; in fact, the latter ventured an opinion that when the collision occurred a speed of forty-five miles an hour had been attained. The Maynards testified that as the taxicab came out of the curve, decedent was seen riding slowly on his bicycle near the intersection. Norvell said that when the taxicab was about two or three hundred feet from the intersection, decedent made a more or less gradual turn toward the left in the direction of Miller Road, and that about ten or fifteen feet from the point at which Miller Road led into route 52 decedent started to turn. James Maynard said that the taxicab was about two hundred feet from decedent when he first started to turn to the left; that the taxicab driver applied his brakes when the cab was fifty or seventy feet behind decedent; that the left wheels of the taxicab were leaving the pavement on the left when decedent was hit; and that the taxicab was not very far behind decedent (fifty or seventy-five feet) when decedent swung out. As decedent was seen to turn his bicycle to the left, he gave no signal, did not turn toward the left, and evidently was oblivious of the approaching taxicab.

Decedent's bicycle evidently came in contact with the taxicab near its front. In fact, James Maynard testified that the right front fender, the windshield post, and the windshield were "cracked and battered." Both Maynards

testified that decedent was traveling slowly, five or six miles an hour.

The state troopers testified that their examination of the scene disclosed no skid marks. However, their examination was made three hours after the collision, at a time when it was so dark that the use of flash lights was required. James Maynard testified that the taxicab began to skid ten or twelve feet below the guardrail, which ran along the easterly side of the road, to a point about one hundred and fifty feet from where the taxicab came to rest in a corn field after striking decedent. Norvell Maynard testified that he saw skid marks which ran from a point slightly below the guardrail to where the taxi came to a stop in a corn field. A Mrs. Thompson, one of the occupants of a nearby house, said she saw skid marks which ran from about twelve feet below the guardrail for a hundred feet to where the decedent had been lying, as shown by the blood on the road. Her niece, seventeen years of age, said she heard the taxicab skid, and saw skid marks about twelve feet from the end of the rail.

Defendant's counsel introduced in evidence a statement signed by the Maynards to the effect that the taxicab was coming down the hill at about thirty or thirty-five miles an hour on the extreme right of the road, when a boy on a bicycle suddenly cut in front of the cab. This statement, though damaging to plaintiff's theory of the case, simply goes to the credibility of the Maynards as witnesses. "It is the peculiar and exclusive province of the jury to decide upon the credibility of witnesses." 3 Jones, Evidence in Civil Cases, 4th Ed., 1684, and cases cited in note 12. This Court has held in numerous cases that the question of the credibility of witnesses and the weight of testimony is peculiarly for the jury. See cases cited in Sec. 117, Witnesses, Michie's Digest.

The primary question for consideration is whether or not the jury could have reasonably inferred that defendant, through its driver, was guilty of negligence which proximately caused decedent's death. Upon careful analysis we think this record, when all reasonable inferences

are drawn in plaintiff's favor, and all facts favorable to plaintiff are assumed, clearly shows that defendant's taxicab was being driven at an illegal rate of speed beyond proper control and without a proper lookout upon the part of defendant's driver. In the first place, the hill from its top to a distance below Miller Road was steep. Though it was not designated by a proper sign as a "steep hill", as provided by Code, 1931, 17-8-12, so that the fifteen miles an hour speed limit would conclusively apply, yet the two state troopers testified that the hill was as steed as any in the vicinity. In this they are corroborated by other disinterested witnesses, and above all things else defendant's counsel admit in their brief that the hill was, in fact, steep. Under the circumstances we think the jury could have reasonably inferred that the statutory fifteen mile speed prescribed on steep grades should apply. Nevertheless, the taxicab was driven at a speed of not less than thirty-eight miles an hour. Whether or not the speed limit was fifteen miles per hour or more seems immaterial to us, because the evidence here is such that the jury could have said that the taxicab was actually being driven at an improper and excessive rate of speed. We say this because the evidence shows that the taxicab skidded from a short distance below the guardrail to a place near a bush in the corn field, a distance of at least one hundred and fifty feet as disclosed by this record. Further evidence of an excessive speed is indicated by the testimony of one of the Maynards to the effect that the speed was forty-five miles an hour at the time the boy was hit. In addition, the impact threw decedent a distance of about twenty-five feet, and there is uncontradicted evidence to the effect that the front fender, windshield, and windshield post of the taxicab were shattered by the collision. In addition, the evidence to the effect that the driver could have seen decedent riding slowly near the intersection as the taxicab came out of the curve a distance of five or six hundred feet away indicates that the driver did not keep a proper lookout. Moreover, this record, it seems to us, would have justified

the jury in finding that in addition to excessive speed and the failure to keep a lookout, the taxicab was being driven without a proper control.

Defendant's counsel say that though defendant was guilty of primary negligence, plaintiff is precluded because decedent's own negligence in turning to the left without looking back or giving a signal contributed toward the decedent's death. However, it was for the jury to say, and not the trial court, that decedent's failure to give a signal and to look back was contributory negligence. In this jurisdiction a person using a public road has a right to assume that those likewise using the road will use due care. *Sewell* v. *Lawson,* 115 W. Va. 527, 177 S. E. 293; *Ritter* v. *Hicks,* 102 W. Va. 541, 545, 135 S. E. 601, 50 A. L. R. 1505; *Chaney, Admr.* v. *Moore,* 101 W. Va. 621, 628, 134 S. E. 204, 47 A. L. R. 800; *Ambrose* v. *Young,* 100 W. Va. 452, 461, 130 S. E. 810; *Deputy* v. *Kimmell,* 73 W. Va. 595, 603, 80 S. E. 919, 51 L. R. A. (N. S.) 989, Ann. Cas. 1916E, 656. In point 1 of the syllabus of the *Sewell* case, this Court said: "Failure to anticipate the omission of reasonable care on the part of a driver in the operation of an automobile does not ordinarily render a person contributorily negligent." Here, the jury had a right to say that decedent in the exercise of reasonable care, under the circumstances should not have assumed that a motor vehicle would be driven down an admittedly steep road at an excessive rate of speed and beyond all reasonable control. The cases of *Hesser* v. *Grafton,* 33 W. Va. 548, 11 S. E. 211; *Slaughter* v. *City of Huntington,* 64 W. Va. 237, 61 S. E. 155, 16 L. R. A. (N. S.) 459; *Shriver* v. *County Court of Marion County,* 66 W. Va. 685, 66 S. E. 1062, 26 L. R. A. (N. S.) 377, cited by defendant's counsel, are not in point. They simply involve liability growing out of the use of public streets and roads alleged to have been defective. Under the circumstances we do not think the trial judge was justified in directing a verdict on the theory of contributory negligence.

Let us at this point assume that both decedent and defendant were guilty of negligence which contributed

toward the collision. The question then arises, whether or not this case lends itself to the application of the doctrine of last clear chance. We think it does. We say this because the record contains evidence to the effect that the taxicab was two hundred or more feet from the intersection when decedent was seen to turn slowly and gradually toward the left, and notwithstanding the driver did not apply his brakes until the cab was fifty or seventy feet away from decedent. When we consider that decedent was struck at the intersection, it seems to us that, drawing all reasonable inferences in plaintiff's favor, defendant's driver saw or by the exercise of reasonable care could have seen decedent in a position of peril, and because of his evident obliviousness to his peril could not extricate himself therefrom, and that the jury could have said, that the driver's duty to realize decedent's peril occurred when there was a sufficient interval of time for him by the exercise of due care to avert the collision. Such being the situation, this case comes clearly within the rule of *Smith, Admr.* v. *Gould,* 110 W. Va. 579, 159 S. E. 53, 92 A. L. R. 28, as modified by *Meyn* v. *Dulaney-Miller Auto Co.,* 118 W. Va. 545, 191 S. E. 558. In point 4 of the syllabus of the *Meyn* case, this Court said: " * * * a negligent plaintiff, oblivious of impending danger, may nevertheless recover for injuries, where the defendant knew of the plaintiff's situation, and, under the circumstances, in the exercise of reasonable care, should have realized the plaintiff's peril, and, on such realization, could have avoided the injury." Under the rule, as stated in the last-mentioned case, where a plaintiff cannot escape from his position of peril, it is immaterial whether the defendant had actual knowledge of plaintiff's position and was under a duty to realize the peril, or by the exercise of reasonable care could have seen and realized plaintiff's peril. See generally 2 Restatement, Torts, Sec. 479.

The judgment of the circuit court is reversed, the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*