THELMA E. WEBB, *Admx. v.* DENNIS A. HARRISON

(No. 9589)

Submitted September 20, 1944. Decided October 17, 1944.

*William F. Blue, Blue, Dayton & Campbell,* and *Fred O. Blue,* for plaintiff in error.

*B. J. Pettigrew* and *Rummel, Blagg & Stone,* for defendant in error.

Rose, President:

On the trial of an action in the Circuit Court of Kanawha County, in which Thelma E. Webb, as Administratrix of her husband, Roscoe S. Webb, was plaintiff, and Dennis A. Harrison was defendant, based on the alleged wrongful death of the deceased, resulting from his having been struck by an automobile driven by the defendant, at the close of the plaintiff's evidence the court overruled a motion by the defendant for the direction of a verdict in his favor, but sustained a like motion at the completion of defendant's evidence and entered judgment accordingly.

The accident occurred on or near the northern edge of the paved portion of a public highway known as United States Route No. 60, between the towns of South Charleston and St. Albans, in Kanawha County, at about nine o'clock P. M. on May 1, 1943, at the point of the entrance onto the paved portion of said highway of a private driveway extending to and along the side of deceased's residence. The road, at this point, was straight and level for several hundred feet in either direction. It was paved with concrete for a width of twenty-two feet. A hedge in front of deceased's lot was twenty-five feet from the northern edge of the pavement. The deceased had gone to a store west of his home to purchase a sack of feed. During his absence a guest arrived and parked his car in the driveway. The deceased returned riding on the right side in the

seat of the truck by which the feed was being delivered. This truck was driven into the driveway and stopped, whereupon the deceased alighted on the right, or east, side of the truck. The driver testified that he asked the deceased, immediately after his alighting, whether the truck was clear of the road, and that, on receiving a negative reply, he drove the truck forward until its front bumper touched the rear bumper of the guest's car, and then set his brakes and stopped his engine. Immediately thereafter he heard the rattling of the chains by which the tail gate of the truck was held up, followed by a "racket" or "blundering", upon which he hastened to the rear of the truck and found the deceased lying ten or twelve feet west of the driveway, with his head on the pavement and his body extending outward on the berm. The defendant, after having stopped his car off the road at a point about fifty feet west of the point of the accident, immediately returned to assist in giving aid to the injured man, as did another driver who was passing eastward at the moment of the accident. The deceased was cared for in his home until an ambulance took him to a hospital in South Charleston, where he died at seven o'clock the next morning.

The surgeon at the hospital testified in part, speaking of the deceased, as follows:

"He had massive lacerations to the scalp in the mid parietal occipital region extending from the frontal to the occipital bone, from here back to here (indicating on head).

* * * a fractured skull in the mid vault, which means up here on the top of the head, a fractured skull. He had lacerations over the right eye and left side of his head; he had abrasions and contusions and lacerations over the body. He had a massive laceration over the gluteal region on the right side, which means along here (indicating). He had fractured ribs on the left chest, severe abdominal pain and he had brush burns through the skin in some places on the right side of his face, and he died of embolism.

* * * in fact there were very few parts of his body that were not involved in some way. He was terribly contused and lacerated, and he had brush burns and then of course he had this massave fracture of the skull. He had his ribs and everything on the left side fractured, crushed."

The bed of the truck body was forty-eight inches from the ground. A slat from the rear of the framework of the truck above this body was found broken off. The guest whose car was parked in the driveway testified that its rear extended outside the hedge approximately three feet by actual measurement. The plaintiff also estimated the truck to extend three feet beyond this hedge. The truck itself was fifteen feet, four and one-fourth inches in length from the front bumper to its extreme rear. The tail gate was seventeen and one-half inches in height. Mathematically, these distances would place the rear edge of the tail gate, when lowered to a horizontal position, five feet, two and one-fourth inches from the edge of the pavement. The passing motorist who stopped estimated the distance of the rear of the truck from the pavement to be five or six feet. The owner of the parked car, shortly after the accident, stated to an investigator that the rear of the truck was two feet or more from the pavement; but he explained 'as a witness, that later, he made actual measurements and determined the distance to be four or five feet. The truck driver stated the distance to be "a good two feet if not more".

The defendant testified that he was twenty-seven years of age and an employee of a chemical concern near Charleston; that he had not slept since going to work at midnight immediately preceding; that his shift ended at seven o'clock on the morning of the accident, after which he worked about his home until about six o'clock P. M., when he went to South Charleston, from which place he was returning when the accident occurred; that his headlights were burning and stronger than ordinary headlights; that he was driving on the right or north side of the pavement at about twenty-five or thirty miles per

hour; that his car did not leave the pavement until after the accident; that the rear of the truck was about two to two and one-half feet from the edge of the hard surface; that he saw the truck while about three hundred feet distant and swerved his car inward from the edge of the pavement to a line about two and one-half feet inside the north edge of the pavement as he approached the truck; that he saw nobody about the truck and knew nothing of the deceased's presence until he heard the blow against his car; that he did not know how the deceased reached his car; that a bit of cloth was found in a break in the right front fender of his car, which was afterwards identified as part of the deceased's trousers; that his car door was indented about two to four inches in depth and about eight inches in length, and the rear window was broken out; and that the crash occurred just as the front of his car passed the rear of the truck. When asked if the deceased was standing in the rear of the truck as he passed he answered: "If he was I did not see him. * * * I said if he was standing there I did not see him. * * * If he had been there I would have seen him though. * * * I never seen the man, I don't know where he was standing."

The cases of *Fleming* v. *McMillan,* 125 W. Va. 356, 26 S. E. 2d 8, and *Fleming* v. *Hartrick,* 100 W. Va. 714, 131 S. E. 558, are invoked to justify the directed verdict in favor of the defendant. In these cases we said:

> "Negligence is never presumed; it must, when relied on as a basis of an action for damages, be established by a preponderance of the evidence, and unless so established the plaintiff is not entitled to recover, and the court should so instruct the jury."

But these cases do not discover or announce any new or novel rule for the appraisal of the evidence in tort cases. They simply apply a principle of simple logic and common sense which the human mind instinctively accepts and which the courts have always recognized, namely, that there can be no recovery by a plaintiff without proving

the cause of action. The only problem courts have with this principle is the practical one of correctly testing the evidence thereby.

In the present case there is not presented the total void in the evidence that was fatal to a recovery in the cases above mentioned. It is true that no eyewitness testified to the precise manner in which the deceased was struck by the defendant's car. But observers do give testimony as to facts and circumstances which do substantially indicate what happened. The truck behind which the deceased is shown to have been standing is stated by two witnesses as being distant from the paved road by five to six feet. A slat was broken from the rear of this truck; green paint was found on the deceased's jacket corresponding to the paint on the slat. The defendant, apparently in partial explanation of the accident, stated to bystanders that he had had no sleep for nearly twenty-four hours, and offered no explanation of the accident other than that he had not seen the deceased. These facts in evidence do not leave the manner of the accident to pure conjecture. There was at least some evidence tending to indicate that the defendant, by reason of fatigue or inattention, allowed his car to swerve from the pavement and to crush against the body of the truck the deceased, who may be inferred to have been standing in the rear of the truck with his back to the road. Such a deduction from the facts proved is nothing more than the legitimate utilization of circumstantial evidence. This type of evidence has often been held competent and adequate in negligence cases. In an action for wrongful death by an automobile accident, the Supreme Court of Virginia has said: "Inferences drawn from physical facts may be as strong as direct evidence. Such inferences amount to circumstantial evidence. Facts may be proven by circumstantial evidence as well as by direct evidence." *Barry* v. *Tyler,* 171 Va. 381, 199 S. E. 496. Substantially the same reasoning is found in *Berry* v. *Colborn,* 65 W. Va. 493, 64 S. E. 636. We know of no holding to

the contrary. The correctness of the court's action in refusing to direct a verdict for the defendant at the conclusion of the plaintiff's evidence is beyond question.

One witness for plaintiff estimated the distance from the rear end of the truck to the edge of the pavement to be only two feet or more, while plaintiff and two other witnesses fix the distance at five or six feet. But a plaintiff is not bound by the least favorable evidence which he has introduced. A motion to direct a verdict for one party must be tested by the sufficiency of the most favorable evidence for the opponent and the legitimate inferences therefrom. *Boyce* v. *Black,* 123 W. Va. 234, 15 S. E. 2d 588; *Fielder* v. *Service Cab Co.,* 122 W. Va. 522, 11 S. E. 2d 115; *Burgess* v. *Sanitary Meat Market,* 121 W. Va. 605, 5 S. E. 2d 785; *Potts* v. *Union Traction Co.,* 75 W. Va. 212, 83 S. E. 918. Moreover, if the rear of the truck was but two to two and one-half feet from the edge of the pavement, this fact would not be necessarily conclusive against the plaintiff, as will hereinafter appear.

But it is said that the defendant's clear and unequivocal testimony that his car did not leave the paved portion of the road but was two and one-half feet inside the edge of the pavement, being undisputed by any direct evidence, must prevail over the mere circumstantial evidence supporting the plaintiff; and that we must therefore hold, as a matter of law, that defendant's car must have been on the pavement, and with no evidentiary showing as to which of the parties, the deceased or the defendant, was responsible for the accident, the plaintiff's case must fail. This reasoning cannot be approved. When a plaintiff, by his evidence, has made a *prima facie* case, ordinarily the question whether it has been successfully rebutted by the defendant is for the jury. *Crowell* v. *Duncan,* 145 Va. 489, 134 S. E. 576; *Hunter* v. *Johnson,* 76 W. Va. 154, 85 S. E. 73; *Dunn* v. *Stump & Copenhaver, Inc.,* 107 W. Va. 406, 148 S. E. 382. Direct testimony has not such a degree of superiority over circumstantial evidence. "The jury is not bound to accept uncontradicted testimony when there

are circumstances which controvert it." *Watson* v. *Burley,* 105 W. Va. 416, 143 S. E. 95. Further, the defendant also testified that he was driving at a speed of twenty-five miles per hour; that the headlights of his car were unusually bright, giving a clear view for three hundred feet ahead of the car; that the atmosphere was clear and the road straight and level and the view unobstructed, but that he did not see the deceased or know of his presence until the deceased and the car collided. But he will not be heard to say that he did not see what he should and could have seen. *Casto* v. *Charleston Transit Co.,* 120 W. Va. 676, 200 S. E. 841; *Yoder* v. *Charleston Transit Co.,* 119 W. Va. 61, 192 S. E. 349; *Walker* v. *Bedwinek,* 114 W. Va. 100, 170 S. E. 908. *Potts* v. *Union Traction Co., supra. Riedel* v. *Wheeling Traction Co.,* 63 W. Va. 522, 61 S. E. 821. It was, we think, legally possible for the jury to have believed that although the deceased was negligently on, or too near, the paved portion of the highway, the defendant, by the exercise of proper vigilance and care, could have avoided injuring him. *Lynch* v. *Alderton,* 124 W. Va. 446, 20 S. E. 2d 657; *Fielder* v. *Service Cab Co.,* 122 W. Va. 522, 11 S. E. 2d 115; *Bean* v. *Baltimore & Ohio R. R. Co.,* 121 W. Va. 105, 1 S. E. 2d 881; *Meyn* v. *Dulaney-Miller Auto Co.,* 118 W. Va. 545, 191 S. E. 558.

The judgment of the trial court will be reversed, the verdict set aside and a new trial awarded.

*Reversed.*