J. A. SPAUR, *Admr. of Clarence R. Spaur, etc.*

*v.*

GERALD L. HAYES, *Admr. of Onslow Haymond Rastle, etc.*

*and*

CORA FOX, *Admrx. of Dennis B. Siers, etc.*

*v.*

GERALD L. HAYES, *Admr. of Onslow Haymond Rastle, etc.*

(No. 12130)

Submitted April 24, 1962.              Decided June 26, 1962.

CALHOUN, JUDGE, dissenting.

*Stathers & Cantrall, Mary Frances Brown,* for appellants.

*Steptoe & Johnson, Kingsley R. Smith, David C. Clovis,* for appellee.

BROWNING, JUDGE:

These two actions for wrongful death arise out of an automobile accident which occurred at approximately 3:00 A.M. on March 18, 1958, in the village of Ireland, Lewis County, West Virginia. By agreement of the parties the cases were consolidated for trial and the following facts were stipulated. The automobile, owned by defendant's decedent, Onslow Haymond Rastle, hereinafter referred to as defendant, and occupied by Rastle and plaintiffs' decedents, Clarence Spaur and Dennis B. Siers, hereinafter referred to as plaintiffs, was proceeding in a southerly direction along U. S. Route 19 when it left the highway in or near a right-hand curve, went off the east or driver's left-hand side of the road and struck a tree, demolishing the automobile and killing all three occupants. All of the decedents were licensed automobile operators and the automobile involved had been purchased by Rastle from Spaur approximately one month previous to the accident. There were no eye witnesses.

The case was tried in November, 1960, 32 months after the accident, and, owing to vagueness of the description of the physical facts as they appeared after the accident it will be necessary to quote the testimony of the various witnesses as to the petinent details at some length. Mrs. Julia Crawford, in answer to a question as to the position of the bodies with respect to the wrecked automobile, stated: "... This Spaur boy was lying on the road, I would say, six to ten feet behind the body of the car. I raised his head in my hand, and he gasped his last gasp in my hand. Then I saw Onslow [Rastle] who was hanging out of the car or with his head and arms down. That part was out of the car, and part was — as I remember it — of course, it was an excitable time. That is how I recollect. Then the Siers boy was lying full length in the car still breathing." On cross-

examination she testified that the automobile was broken into several pieces which were strewn along the berm and the road, the main part of the automobile body being on the south side of the tree, the only part of the automobile remaining on the north side of the tree, to her recollection, being the radiator.

Mr. Paul Loudin, with reference to the positions of the bodies, stated: "The Spaur boy was south of the rest. As well as I remember, the Rastle boy was on the other side of the car or parts of the car, I should say. As well as I remember, one of them was on the northern side of this car or parts of it, and the other one was on the southern side. As to how many feet away, I couldn't say." He was then examined as follows: "Q. Where was the Siers boy found? A. He was found lying on the seat of the car. Q. Which seat? A. I couldn't tell you sir. Q. Concerning the Rastle boy do you recall any more of a particular description of where he was found? A. He was lying over part of the car —a piece of tin, I should say. I don't know exactly what part it was. One foot was up over—well, it was about this much of his body [indicating the head and shoulders] lying on the ground." On cross-examination, the witness testified: "Q. Now the Siers boy was in the wreckage of the car? A. He was lying on a seat. Yes, sir. Q. But the car was so torn up you couldn't tell whether it was the front or back seat? A. After when I put my light down in there, and he was still breathing, all I thought about was getting him to the hospital. Q. The seat part of the car where the Siers boy was lying had been thrown out, hadn't it? A. I couldn't say. It was in the mangle of —. Q. Of the wreckage? A. Wreckage, yes. It was in that. . . . A. Yes, sir. The frame and so forth, the part of the body. I don't remember of even seeing that. Now, this one here— of course, I looked down into this here wreckage here and found the Siers boy. . . . Q. And it [Rastle's body] was lying down over on top of a piece of metal? A. Part of it, yes. Q. There wasn't anything on top of his body? A. Not on top of his body, no. Q. Now, where you found the Rastle boy's body was some distance from the part of the wreckage in which you found the Siers boy's body? A. No, not too much distance, no,

because the Rastle boy was here, and the Siers boy right back of him. Q. As shown in the diagram. A. That is right. Q. And the Siers boy's body was in the wreckage, and the Rastle boy's body was outside or lying on top of a piece of metal? A. That is right. . . ." On redirect, in response to a question as to the position of Siers with reference to Rastle, the witness answered: "A. He was east—more south. Well, it will be south, a little bit south but of the east, I would say."

Mr. Null, who arrived at the scene after the Siers boy had been removed, testified: ". . . Q. Clarence Spaur was on the berm? A. Yes, on the berm. Q. Was that on the Ireland [north] or the Braxton [south] side of the tree? A. I remember him as being on the Ireland side of the tree. Your picture on your display would show the other side, but I remember him as laying on the Ireland side. He wasn't far from the car. Q. What was the position of the Rastle boy? A. He was in the wreckage of the car when I saw him on the road side of the tree. Q. Could you determine what portion of the wreckage he was in? A. Well, from the looks of the car, I should say, it was the front end, and the front part of the car. The car was torn up so bad it was hard to tell one end from the other, for that matter, when I first saw it. Q. Do you recall the position of the car or the part of the car that the Rastle boy was in; in what position was it? A. Well, as near as I can tell it was mashed. The frame had been wrapped around the tree, and the wrecked part of the car, parts of it, were strung all over. It was such a mess it would be hard to tell. Q. Were you present when the Rastle boy was removed from the wreckage? A. Yes. Q. Who removed him. A. This Alva Alkire and myself. . . . Q. Do you recall how he was removed from the car? A. The only thing I recall that this wreckage was — just reached down in the wreckage and pulled him up out. Alkire, when we got him — what of him was intact — one leg was severed, and Alkire got this one leg out, as I remember it. Q. Did you and Alkire together lift the body out, or just who lifted the body out of the car? A. As I remember it, Alkire and I both lifted the main part of the body out. Q. In what manner did you find the body in the wreckage? . . . A. Well,

I would say just exactly — as I remember, there was something laying across this severed leg. I couldn't tell what it was, and the body was — I wouldn't know how to explain it. The body was in the car like it had been thrown. . . . Q. Could you determine from inspecting the automobile where the door would have been on the body of the car? A. As near as I can tell, the left door about the center of the car hit the tree. Q. In relation to the doors on the automobile could you place the Rastle boy's body? A. I would say in the wreckage a little to the front of the doors. Q. Which doors? A. The left — I mean, the front door, the part that hit the tree. Q. Which side of the car hit the tree? A. I would say, the left side." On cross-examination, Mr. Null testified: "Q. I believe part of the Rastle boy's body according to your recollection was lying on the ground? A. No. It was in the wreckage of the car. Q. Was any part of his body touching the ground? A. I don't know. I don't remember that. Q. It could have been? A. It is possible. Q. Where was the Rastle boy's body with relation to the tree that the car hit; was it at the tree or from it? A. Out from the tree just a little on the — toward the road. . . . Q. It was lying on top of some part of the car? A. That is, as I remember it, yes. . . ."

D. A. Lucas, apparently a police officer, testified that: he investigated the accident; the left side of the car hit the tree, approximately at the center; there were tire marks, indicating skidding, beginning on the berm on the left-hand side of the highway and continuing one hundred sixty feet, eight inches, to the right-hand side of the car as it stood next to the tree; the car was mainly torn into two parts, the frame being next to the tree and the top and right-hand doors, and other parts, being approximately twelve to thirteen feet away; the motor was thirty-three feet down the highway; and, only the rear part of the front seat remained in the frame of the car. Mr. Skinner testified that the tree which the automobile hit was a locust, eighteen inches in circumference, which was split and leaning slightly to the south after the accident.

At the conclusion of plaintiffs' case, the trial court, on motion of the defendant, directed a verdict in favor of the

defendant, and overruled the plaintiffs' motion for a new trial, to which judgment this Court granted appeal on September 25, 1961.

In passing upon the question whether a verdict should have been directed for the defendant, the question is whether there was any evidence upon which a verdict for the plaintiffs might properly be found. It is well established in this State that: "Before directing a verdict in defendant's favor, every reasonable and legitimate inference favorable to the plaintiff fairly arising from the evidence, considered as a whole, should be entertained by the trial court, and those facts should be assumed as true which the jury may properly find under the evidence." *Fielder* v. *Service Cab Co.*, 122 W. Va. 522, 11 S. E. 2d 115. It has also been held that even though there is no controversy concerning the actual facts, if different inferences may be drawn therefrom, submission to a jury is required. *American Tel. & Tel. Co.* v. *Ohio Valley Sand Co.*, 131 W. Va. 736, 50 S. E. 2d 884. In applying these rules to the instant case two issues are presented, one, whether the plaintiffs have adduced sufficient evidence to raise a jury question as to negligence, and, two, whether such evidence is sufficient to show that the defendant might be properly charged with such negligence so that a verdict against him would not be set aside on that ground.

As to the first issue, the uncontradicted evidence of the plaintiffs shows that the automobile in which the defendant and the two plaintiffs were proceeding veered to its left at the inception of a right-hand curve, crossed the opposite lane of traffic to the berm on the left side of the highway and thereafter skidded one hundred sixty feet where it struck a tree with such force as to separate the frame from the body of the automobile, and completely demolish it. A legitimate inference from such facts, if not the only one, is that the operator of the automobile was guilty of negligence in any one or more of these ways: in failing to properly observe the road before him; in failing to maintain proper control of the automobile; or in traveling at an excessive speed under the circumstances. In the case of *Reilley* v. *Byard,* 146

174

W. Va. 292, 119 S. E. 2d 650, the automobile in which plaintiff was a passenger ". . . proceeding to its left, across the oncoming or southbound traffic lane, across a berm adjacent to the highway on the left or west side thereof, and struck a telephone pole with such force and violence that the plaintiff's Buick was demolished. . . ." With reference to these facts the Court stated: "It is obvious that the defendant lost control of the Buick automobile he was operating. There can be no other reasonable conclusion from the evidence. Obviously he did not purposely drive the Buick off the hard surface, across the 15-foot berm and into a telephone pole with severe force and violence. Rational men do not purposely operate motor vehicles in such manner. Not only traffic regulations, but also prudence and fundamental human instincts of self-preservation dictate otherwise." It is the opinion of this Court that plaintiffs have established a prima facie case of negligence on the part of the driver of the automobile.

The question as to whether there has been a prima facie showing that the defendant was the operator of the automobile at the time of the accident is more difficult. As heretofore pointed out, the witness Null places the body of the Spaur boy at a location in conflict with that described by the other witnesses. However, all of the witnesses place the defendant's body as the one nearest the frame of the automobile and lying on, or hanging out of, the wreckage of the body of the automobile near the left front door. The evidence is uncontradicted that the middle of the car, on the left side, struck the tree. It might be said that the defendant was the most seriously injured, though all died, in that one of his legs was completely severed, and from this fact it might be inferred that such severance occurred by reason of his position as driver of the automobile and in close, and confined, proximity to the operating mechanisms thereof. In addition, defendant was the owner of the automobile. It is true that such evidence is only circumstantial. But, as was said in *Webb* v. *Harrison,* 127 W. Va. 124, 129, 31 S. E. 2d 686, "This type of evidence [circumstantial] has often been held competent and adequate in negligence cases. In an action for wrongful death by an automobile accident, the

Supreme Court of Virginia has said: 'Inferences drawn from physical facts may be as strong as direct evidence. Such inferences amount to circumstantial evidence. Facts may be proven by circumstantial evidence as well as by direct evidence.' *Barry* v. *Tyler,* 171 Va. 381, 199 S. E. 496. Substantially the same reasoning is found in *Berry* v. *Colburn,* 65 W. Va. 493, 64 S. E. 636. We know of no holding to the contrary." Jurors, in determining the weight of evidence and the credibility of witnesses may take into account their common general knowledge and experience as men in ordinary affairs of life. *Head* v. *Hargrave,* 105 U. S. 45, 26 L. Ed. 1028. In that case, Mr. Justice Field stated: "While they [jurors] cannot act in any case upon particular facts material to its disposition resting in their private knowledge, but should be governed by the evidence adduced, they may, and to act intelligently they must, judge of the weight and force of that evidence by their own general knowledge of the subject of inquiry."

Upon careful analysis of this record we are of the opinion that the evidence of the plaintiffs, when all reasonable inferences are drawn in plaintiffs' favor, and all facts favorable to plaintiffs are assumed as true, was sufficient to present a question for jury determination. It was, therefore, reversible error for the trial court to take the case from the jury by directing it to return a verdict for the defendant at the end of plaintiffs' case. The judgment of the Circuit Court of Lewis County is reversed and the case is remanded for a new trial.

It has been strongly urged by counsel for plaintiffs that the doctrine of res ipsa loquitur is applicable to the instant case and also that this Court should indulge in the presumption that the owner of a motor vehicle, if an occupant, was the driver thereof at the time of an accident. However, in view of the decision that plaintiffs have established a prima facie case, it is both unnecessary and inadvisable to comment on these points at the present time and such questions are specifically reserved until presented to the Court in a proper case.

*Reversed and
remanded.*

CALHOUN, PRESIDENT, dissenting:

I agree with the majority opinion to the extent that it declines to hold that this case presents a proper situation for application of the doctrine of *res ipsa loquitur* and declines to hold that a presumption or inference that Rastle was the driver arises from the mere fact that he was the owner. I agree that the circumstances present sufficient evidence of negligence on the part of the driver to make a jury question; and that the identity of the driver, like any other fact, may be established by circumstantial evidence. I earnestly disagree, however, with that part of the opinion which holds that the circumstances or physical facts are sufficient to disclose by a preponderance of the evidence that Rastle was the driver of the automobile at the time of the accident in question.

We must bear in mind that the evidence as to the physical facts is not without confusion, conflict and contradiction; that each of the three occupants of the automobile was a licensed driver; that the automobile had been owned by Spaur about a month prior to the accident; and that Siers was the only one of the three whose body was still completely in the wreckage after the accident.

There is no need to cite authority for the proposition that the identity of the driver, like every other fact essential to plaintiffs' recovery, must appear by a preponderance of the evidence. "To call peremptorily for the submission of an issue to the jury, it is not sufficient that there be a mere scintilla of evidence supporting it; and if the court would not allow a verdict to stand thereon, it may properly direct a verdict for the party against whom the evidence is offered." *Hicks* v. *New River & Pocahontas Consol. Coal Co.*, 95 W. Va. 17, pt. 3 syl., 120 S. E. 898.

In this jurisdiction a mere scintilla of evidence is not sufficient to take a case to the jury. It is equally clear that "evidence raising only conjecture, guess, speculation, surmise, or suspicion is insufficient to take the case to the jury, * * *." 88 C.J.S., Trial, Section 208, pages 429-30; The Law of Evidence (Virginia & W. Va.), Section 205, page 367. If a fact essential to a plaintiff's recovery "is left to conjec-

ture or uncertainty, the burden has not been carried, and judgment should be for defendant." *Legg* v. *Junior Mercantile Co.*, 105 W. Va. 287, syl., 142 S. E. 259. The evidence "should do more than produce a suspicion of the fact — it should be sufficiently clear and definite in its character to satisfy the mind of the court of the fact, to a reasonable certainty." *Sims* v. *Bank of Charleston*, 8 W. Va. 274, pt. 5 syl. "In an action for tort, the plaintiff bearing the burden of proof, a verdict for him cannot be found on evidence which affords mere conjecture that the liability exists, * * *." *Moore* v. *Heat & Light Co.*, 65 W. Va. 552, pt. 1 syl., 64 S. E. 721.

To hold that the physical facts and circumstances are sufficient to warrant a jury in finding that Rastle was the driver of the automobile at the time of the accident is, in my opinion, to give the jury unbridled liberty to engage in the wildest sort of conjecture, surmise and speculation, and to base a verdict on mere suspicion. I am firmly of the opinion that, when tested by pertinent, fundamental legal principles, a verdict against Rastle's estate could not be upheld by the trial court or by this Court.

For the reasons stated briefly herein, I believe the judge who presided at the trial, and observed the witnesses was clearly right in directing a verdict for the defendant. I would, therefore, affirm the judgment of the trial court.