MILDRED K. SMITH, *Admrx., etc.*

*v.*

EDWARD M. RUDE CARRIER CORP., *et al.*
NELSON R. ALESHIRE

*v.*

MILDRED K. SMITH, *Admrx., etc.*
*and*
EDWARD M. RUDE CARRIER CORP.

*v.*

MILDRED K. SMITH, *Admrx., etc.*

(No. 12541)

Submitted October 4, 1966. Decided December 13, 1966.

*Deem & Marstiller, James A. Marstiller, Steptoe & Johnson, Jackson L. Anderson,* for appellants.

*Clifford, Jones & Williams, James C. West, Jr., Mc-Whorter, McNeer, Highland & Morgan, James E. Mc-Neer, Herschel Rose,* for appellee.

CAPLAN, PRESIDENT:

This is an appeal from an action which arose out of a collision between an automobile operated by Edward R. Smith, decedent of plaintiff Mildred K. Smith, and a tractor driven by defendant Nelson R. Aleshire. In her complaint, Mildred K. Smith, Administratrix of the Estate of Edward R. Smith, alleged that Nelson R. Aleshire, while operating a White tractor, owned by the Marlowe Corporation and leased to Edward M. Rude Carrier Corporation, negligently and unlawfully

collided with the automobile operated by Edward R. Smith, causing the latter's death instantaneously. The defendants in this action were the Marlowe Corporation, hereinafter called Marlowe, Edward M. Rude Carrier Corporation, hereinafter called Rude, and Nelson R. Aleshire, an employee of Rude.

After answering the complaint, the defendants filed a counterclaim alleging that the collision and consequent damages were the result of the negligence of Edward R. Smith. Marlowe demanded payment of $5,000.00 for the loss of use of the tractor; Rude sought to recover $3,000.00 for damages to the tractor; and Aleshire claimed damages for personal injuries in the sum of $25,000.00. In addition to the counterclaim, Rude and Aleshire instituted separate actions against the Smith estate, to which counterclaims were filed by the administratrix, Mrs. Smith.

These actions were instituted in the Circuit Court of Marion County, and since they arose from a cause common to all, they were consolidated for trial and heard together. Upon trial of these matters the jury returned a verdict in favor of the plaintiff in the sums of $25,000.00, $15,000.00 of which represented financial or pecuniary loss to the distributees of Edward R. Smith, and $2,138.30 for funeral expenses and damages to the Smith automobile. Marlowe, having been dismissed by agreement of the parties, is no longer a party to this proceeding. Judgment was entered on the verdict and defendants Rude and Aleshire prosecute this appeal.

The collision out of which these actions arose occurred on December 24, 1964, at approximately 5:45 P.M., on State Route 73, near the community of Eldora in Marion County, West Virginia. It was late twilight, the sky was cloudy and the road was dry. The collision occurred in a straight portion of this state highway at a point near the intersection of a secondary road known as Sweeps Run Road. Defendant Aleshire was

driving a White tractor, of the approximate weight of 15,000 pounds, toward the city of Clarksburg. The deceased, Edward R. Smith, in a 1957 Chevrolet automobile weighing 3,300 pounds, was traveling to the city of Fairmont. As noted, somewhere in the vicinity of Sweeps Run Road these vehicles collided. After the collision the vehicles came to rest several feet off the road adjoining the lane of travel of Smith's car, the tractor pointing away from the highway and the automobile almost parallel to the tractor but facing the road.

There were no eyewitnesses to the actual collision of these vehicles other than the defendant, Aleshire. It is the defendants' position that evidence adduced at the trial on behalf of the plaintiff was insufficient to overcome the direct testimony of the driver of the tractor, Aleshire, and that to submit the case to the jury in those circumstances would permit a finding to be made on speculation and conjecture. The basic question presented on this appeal, therefore, is: Was there sufficient evidence, including physical facts, from which the jury could find, without engaging in speculation, that the collision took place in Smith's lane of travel? In order to resolve this question it is necessary to examine the evidence for the purpose of determining whether such evidence proved negligence on the part of Aleshire or justified an inference thereof.

Robert M. Hanning, a farmer who resides on Sweeps Run Road, appeared as a witness on behalf of the plaintiff. He testified that immediately prior to the accident he was driving a farm tractor with a two wheel cart attached thereto along State Route 73, traveling in the direction of Clarksburg. Hanning was in the same lane of traffic and in front of defendant Aleshire. According to his testimony, he was preparing to turn right into Sweeps Run Road when he observed Smith approaching from the opposite direction. At the same time and prior thereto he had heard the Rude tractor to his rear. Hanning stated

that as Smith approached and as he passed him, Smith was in his own lane on the highway and that the road was straight and unobstructed. At approximately the same time, as he was beginning to turn right into the secondary road, he heard what he believed to be air being released from the brakes of the Rude tractor. A few seconds later he heard the collision, at which time he had made his right turn off the highway but related that the two wheels of the cart were still on the blacktop portion of the road. He said he had traveled about the length of his tractor between the time Smith passed him and the time of the impact. Also, he heard the Rude tractor behind him prior to hearing its air brakes and estimated its distance at about twenty five yards. Hanning did not see the collision and could not say where, in relation to the center of the road, it occurred.

Mr. Hanning, after hearing the crash, looked over his right shoulder and noted the movement of the wrecked vehicles. He testified that they moved in a semi-circle and across the road and that the "truck kept kicking to the other side". The following question was asked and answer given during the direct examination of Hanning: "Q. * * * How far from there and in which direction was the car going, to where they finally came to rest? A. About 65 feet from where the impact was to where they came to rest, and the truck pushed the car back up there slightly in a semi-circle over that embankment there."

On cross-examination Mr. Hanning said that at the time of the accident it "wasn't real dark, but it was getting dark; more like a twilight". He noted that there were no lights on his tractor. Other than related above, Mr. Hanning testified as to the location of the vehicles after they had come to rest and Mr. Smith's body in relation thereto.

Mr. Ernest Manzo, a deputy sheriff of Marion County who investigated this accident, appeared as a wit-

ness on behalf of the defendants. He arrived at the scene at approximately 6:00 P.M. and made certain observations which were included in a written report from which he testified. According to his report he observed skid marks which led from the defendant driver's side of the road to the place where the vehicles left the highway. Mr. Manzo further related that he observed debris, consisting of dry dirt, which was located three feet nine inches to the right of the center line as one traveled toward Clarksburg. This would be in the defendant driver's lane. He further noted that the skid marks on the highway were approximately seventy feet in length, led up to the pile of debris, and from there to the point where the vehicles went off the road. His testimony in relation to the skid marks was somewhat confusing as to their exact location and the number involved. He stated that there were no truck or automobile parts on the highway, although there was broken glass which was not concentrated in any particular location but was on both sides of the road.

Describing the condition of the vehicles after the wreck, Mr. Manzo noted that the automobile was damaged in the front, left side and top. The damage to the truck was on the left front but the headlights were undamaged. This description is supported by photographs introduced as exhibits.

Mr. Gordon S. Ralphsnyder, Jr. was called as a rebuttal witness by the plaintiff. He testified that he arrived at the scene of the accident after Mr. Manzo but prior to the arrival of the wrecker; that in assisting the deputy sheriff in making his observations he had taken several photographs, some of which were introduced as exhibits during the trial; that during his investigation he did not observe any skid marks which could be attributed to the vehicles involved in this collision, nor did he see the debris to which Mr. Manzo referred; and that the road was not swept or cleared by anyone while he was there.

The defendant driver Aleshire testified that he was driving a White tractor without a trailer on State Route 73 toward Clarksburg on December 24, 1964, at approximately 5:45 P.M. As he approached the intersection of Sweeps Run Road, while driving in his proper lane of traffic he saw the lights of Smith's vehicle approaching from the opposite direction and noted that it was in its proper lane of traffic. He then said that as the Smith vehicle came to within approximately forty feet it veered over into his lane of traffic, further saying, "all of a sudden I saw his lights—it looked to me like they were straddled with the white line—coming head on". According to his testimony he immediately applied his brakes and the impact occurred. Aleshire contended that the Smith car "jammed the front left wheel under the tractor", swinging the tractor around, and both vehicles went across and off the highway from Smith's lane of travel. He said that the left front wheel of his tractor was locked in a left turn position, such condition being caused by the body or bumper being crushed against it in the collision. He admitted on cross-examination that he could not have turned his wheels to the left after the collision and, further, that thereafter he had no control over the wheels. Mr. Aleshire insisted throughout his testimony that he did not, at any time, see the Hanning farm tractor in front of him and that the collision occurred in his lane of traffic.

During the direct examination of defendant Aleshire, his daily log, which purported to show his driving activities for December 24, 1964, was introduced into evidence. Mr. Aleshire's log revealed that on that day he drove this White tractor with an empty trailer from Hillsville, Pennsylvania, to Fairmont, West Virginia, in 2½ hours. This was confirmed by the following direct testimony: "Q. You stayed in Hillsville how long? A. Two hours. Q. And left at what time? A. 1:30. Q. In the afternoon? A. That's right. Q. Where did you go then? A. I drove from Hillsville to Fairmont,

West Virginia. Q. How long did it take you to arrive at that destination? A. 1:30 to 4:00. Q. That would be two and one-half hours? A. Correct. Q. And you arrived in Fairmont at 4:00 in the afternoon? A. Correct.''

By Mr. Aleshire it was established, and was undisputed, that the distance between Hillsville and Fairmont is 149 miles. Based on the log and the above testimony, adduced during direct examination, it is revealed that his average speed during this trip, which involved passing through several communities, was 59.6 miles per hour. The defendant driver further testified that the purpose of keeping the log was to satisfy Interstate Commerce Commission regulations, one of such regulations being that an operator of a certificated vehicle shall drive no longer than ten hours in any twenty-four hour period. This log showed his driving time for December 24, 1964, at nine hours.

On redirect examination Mr. Aleshire was asked to comment on his former testimony which revealed that he drove the vehicle 149 miles in 2½ hours, for an average speed of 59.6 miles per hour. The objection to this question was sustained by the court and an exception was noted. Mr. Aleshire was then asked if his vehicle could average 59.6 miles per hour over the distance traveled. Again an objection was sustained. Counsel for the defendants then made the following inquiries and received these answers: ''Q. You have written in your log here that you arrived in Fairmont at 4:00 P.M. in the afternoon, is that correct? A. Correct. Q. Then, it only took you 2½ hours? A. Impossible.'' An objection was made and the court, sustaining it, cautioned the jury to disregard the question and answer.

The refusal of the trial court to permit Mr. Aleshire, on redirect examination, to comment on his former testimony relative to his time of travel between Hillsville and Fairmont is assigned as error on this appeal. The position of the appellants is that the log contained

an obvious error and to permit its introduction without an explanation would allow evidence that the defendant driver was traveling at a fast and highly dangerous rate of speed at a time before the accident. The record reveals that the defendants, without any inducement on the part of the plaintiff, introduced the log into evidence. In addition, defendant Aleshire unequivocally testified that he made the trip of 149 miles in 2½ hours, there being no apparent need for an explanation at that time. When the defendant, Aleshire, again made this admission on cross-examination, an attempt was made on redirect examination to explain away this alleged inconsistency. We have examined the authorities cited by the defendants and find that they relate basically to the admissibility of parol evidence for the purpose of varying or explaining a written contract or deed. They are not applicable to the question presented here.

The trial court did not commit error in refusing to allow defendant Aleshire to comment on his former testimony which revealed that he had traveled 149 miles at an average speed of 59.6 miles per hour. The testimony upon which the defendants now desire comment was adduced during the direct examination of Mr. Aleshire. It was in no manner induced by the plaintiff. When it became apparent to the defendants that such testimony might be detrimental to their case an attempt was undertaken to change it. What would be the purpose of commenting on such testimony if it were not to alter it in an endeavor to improve the defendants' position? The question did not call for an explanation of the log; it called for a deviation from his former testimony. In order to accomplish the defendants' desired purpose, such comment could only show that his speed between Hillsville, Pennsylvania and Fairmont was not as great as he had formerly testified.

Such testimony would be entirely immaterial to the issue in the case at bar. We perceive no manner in

which the speed of the Rude tractor between Hillsville, Pennsylvania, and Fairmont could be relevant to the proper resolution of this proceeding. Mr. Aleshire testified that it took him one hour to travel from Fairmont to the scene of the accident, a distance of seven to ten miles. There is not, in the instant case, any allegation of excessive speed on the part of the tractor as a contributing factor to the collision. Furthermore, evidence of the rate of speed at which Mr. Aleshire drove between Hillsville and Fairmont could have no bearing on the issue in this case.

Evidence which is irrelevant and immaterial and has no probative value in determining any material issue is inadmissible and should be excluded. *Ward v. Smith,* 140 W. Va. 791, 86 S. E. 2d 539; *Mott v. Davis,* 90 W. Va. 613, 111 S. E. 603; *Siever v. Coffman,* 80 W. Va. 420, 92 S. E. 669; *Walters v. Appalachian Power Co.,* 75 W. Va. 676, 84 S. E. 617; *Chicago Art Co. v. Thacker,* 65 W. Va. 143, 63 S. E. 770. See also 31A C.J.S., Evidence, §159 et seq. This assignment of error, therefore, is without merit.

The basic issue raised by the defendants on this appeal is whether there was sufficient evidence on behalf of the plaintiff to warrant the submission of the case to the jury. In their behalf the defendants contend that the plaintiff's evidence, being circumstantial in nature, was insufficient to overcome the testimony of the defendant driver, the only eyewitness to the actual collision. They argue, therefore, that the court should have directed a verdict in their favor.

While the principal is elemental that the evidence of the plaintiff must establish a prima facie case of negligence against the defendant in order to warrant jury consideration, it is equally well settled that the necessary showing of negligence may be made by circumstantial as well as direct evidence. *Bronson v. Riffe,* 148 W. Va. 362, 135 S.E. 2d 244; *Butler v. Smith's Transfer Corp.,* 147 W. Va. 402, 128 S.E. 2d 32;

*Spaur v. Hayes,* 147 W. Va. 168, 126 S. E. 2d 187; *Payne v. Valley Motor Sales,* 146 W. Va. 1063, 124 S. E. 2d 622; *Webb v. Harrison,* 127 W. Va. 124, 31 S. E. 2d 686; *Barry v. Tyler,* 171 Va. 381, 199 S. E. 496.

As stated in 32A C.J.S., Evidence, §1038, evidence which is uncontradicted or undisputed should be taken as true. It is noted therein, however, that this rule is subject to many qualifications, one of which is that reasonable inferences from physical facts and circumstances may outweigh undisputed oral testimony. In fact, evidence may not be regarded as undisputed if it is at variance with the circumstances in the case or with reasonable inferences therefrom. Where credible circumstantial evidence establishes a prima facie case of negligence a jury question exists and it is for the jury to determine whether it is sufficient to overcome direct testimony to the contrary. *Bronson v. Riffe,* 148 W. Va. 362, 135 S. E. 2d 244; *Webb v. Harrison,* 127 W. Va. 124, 31 S. E. 2d 686.

It is not incumbent upon the jury to accept uncontradicted testimony when there are circumstances which controvert it. *Watson v. Burley,* 105 W. Va. 416, 143 S. E. 95, 64 A.L.R. 839. See also *Lusher v. Sparks,* 146 W. Va. 795, 122 S. E. 2d 609. This is particularly so where the witness testifying is a party to the action. See 32A C.J.S., Evidence, §1038, and cases cited in footnote 99. In view of the foregoing, it may be stated as a general rule that evidence not directly contradicted is not necessarily binding on the trier of facts and may, in proper circumstances, though not arbitrarily, be disbelieved and given no weight. *Napper v. Rice,* 127 W. Va. 157, 32 S. E. 2d 41.

Applying the principles herein related to the facts of the instant case, as revealed by the evidence, we can not say that the trial court erred in submitting the case to the jury. While defendant Aleshire, the only person to witness the actual collision, testified that the Smith automobile crossed over into his lane of traffic and

collided with his vehicle, credible physical facts and circumstantial evidence appeared and was offered which, in the eyes of the trier of the facts, could overcome such direct testimony.

The physical facts revealed that the left front wheel of the Rude tractor was locked by the collision in a left turn position, in the direction of Smith's lane of travel; that as a result of the collision the vehicles crossed Smith's lane and came to rest off the berm adjacent to that lane; that the primary point of impact to the Rude tractor was two and one half to three feet from the left front corner, the headlights and left front corner thereof being undamaged, which tends to show that the car did not strike the left front wheel of the tractor as claimed. The testimony of defendants' witness, Manzo, concerning the skid marks on the highway was confusing, as were his comments on the alleged debris. Furthermore, this testimony was refuted by Mr. Ralphsnyder, a witness for the plaintiff. Admittedly the glass on the highway, resulting from the impact, was not concentrated in any particular area. Also pertinent to this consideration is the course taken by the disabled vehicles immediately after the collision. This evidence is a credible basis for belief by the jury that had the truck not been turned to the left it would have continued down the road in its own lane rather than veering across Smith's lane, forcing the latter's car off the road in that direction. Lending credence to this is the undisputed evidence that the Rude tractor was almost five times heavier than the Smith automobile.

According to the testimony of Mr. Hanning, the deceased was driving in his own lane of traffic immediately prior to the accident. Mr. Smith was driving at a high rate of speed. His lights were on and there were no obstructions in front of him. Mr. Hanning, a few seconds before the crash, heard what he believed to be air being released from the brakes of the Rude

tractor. Defendant Aleshire later testified that such sound could be heard when he released his brakes. Mr. Hanning further testified that when the impact occurred the wheels of the cart attached to his tractor were still on the blacktop portion of the road. The jury could reasonably infer from this evidence, together with the physical facts apparent from the record, that the defendant driver saw the farm tractor in front of him, applied his brakes to avoid a collision and then released the brakes preparatory to passing him, thereby turning left into Smith's lane. Concerning Mr. Aleshire's testimony that he did not see the farm tractor, in view of the evidence it is within the province of the jury to believe or disbelieve such testimony. We are not the triers of facts and we do not say that the collision occurred in this manner. However, the evidence is sufficient to permit the jury to reasonably infer negligence on the part of the defendant driver without engaging in mere speculation.

Point 1 of the Syllabus of *Fielder v. Service Cab Company*, 122 W. Va. 522, 11 S. E. 2d 115, reflects the view consistently taken by this Court and reads as follows: "Before directing a verdict in a defendant's favor, every reasonable and legitimate inference favorable to the plaintiff fairly arising from the evidence, considered as a whole, should be entertained by the trial court, and those facts should be assumed as true which the jury may properly find under the evidence." *Nesbitt v. Flaccus*, 149 W. Va. 65, 138 S. E. 2d 859; *Spaur v. Hayes*, 147 W. Va. 168, 126 S. E. 2d 187; *Thornsbury v. Thornsbury*, 147 W. Va. 771, 131 S. E. 2d 713; *Reilley v. Byard*, 146 W. Va. 292, 119 S. E. 2d 650; *Dunn v. Stump & Copenhaver, Inc.*, 107 W. Va. 406, 148 S. E. 382.

Applying the principle in the above quoted language to the instant case, we are of the opinion that the evidence was sufficient to present a question for jury determination.

We have examined the instructions offered by the plaintiff and given by the court, to which the defendants objected, and find no error. Most of the objections noted by the defendants to Instructions Nos. 5 and 7, offered by the plaintiff, were too general to be considered under the provisions of Rule 51, West Virginia Rules of Civil Procedure. That rule provides that the matter to which the party objects and the grounds of his objection must be distinctly stated. An objection which merely complains that the instruction does not correctly state a doctrine, is not a complete statement of the law, is misleading or is incomplete, is not in compliance with the requirement that such objections must be distinctly stated. 53 Am. Jur., Trial, §830. See also Lugar & Silverstein, W. Va. Rules, p. 385. Furthermore, we find that the instructions sufficiently negative contributory negligence.

The defendants objected to the action of the court in giving Instruction No. 8, offered by the plaintiff, noting two grounds therefor. First, they contend that funeral expenses can not be recovered in this action. This ground is not well taken for the reason that the claim for funeral expenses was made in a separate action which is one of the cases consolidated in this proceeding. Such claim is specifically permitted in a separate action by the provisions of Code, 1931, 55-7-6, as amended in 1961.

The second ground of objection, namely, that there is no proof of financial or pecuniary loss, is also without merit. Mrs. Smith, the plaintiff, testified that her two sons lived with her, one of whom was still a student in college; that the deceased had paid for this son's college education; that he did not have any income of his own; that she did not own any property, had no independent income, had never worked and had no particular skill or occupation; and that her only income was from social security payments. Also, there was ample evidence that the de-

336

ceased had been regularly employed, was a steady worker and was in good physical condition. Mr. Clark Michael, an accountant for the Fairmont Times and West Virginian, by whom Mr. Smith was employed, testified that the salary of the deceased at the time of his death was $120.00 per week and would have been raised to $124.00 per week on January 1, 1965. Mr. Michael further said that Mr. Smith could have been employed as long as he desired, there being no compulsory retirement age at his place of employment.

For the reasons stated herein the judgment of the Circuit Court of Marion County is affirmed.

*Affirmed.*