IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

JOHN C. AND BONNIE C., a married couple, individually
and as conservators and guardians of their adopted son,
Z.S.C., a protected person, and JACKIE LEE SPENCER
and PHYLLIS ANN SPENCER, a married couple,
Plaintiffs Below, Petitioners

**FILED**

**May 1, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

v.) No. 25-ICA-183          (Cir. Ct. of Monongalia Cnty. Case No. CC-31-2020-C-159)

MARK E. BRENNAN, in his capacity as
Bishop of the Diocese of Wheeling-Charleston, and the
CATHOLIC DIOCESE OF WHEELING-CHARLESTON,
Defendants Below, Respondents

## MEMORANDUM DECISION

Petitioners appeal three orders entered by the Circuit Court of Monongalia County: two orders entered on December 26, 2024, and a third order entered on April 10, 2025. The first December 26, 2024, order ("Summary Judgment Order") granted six motions for either partial or complete summary judgment filed by Respondents Mark E. Brennan[1] and the Catholic Diocese of Wheeling-Charleston ("Diocese") and denied petitioners' renewed motion for partial summary judgment. The second December 26, 2024, order ("Motions Order") addressed petitioners' four motions for judicial notice and three motions to compel, with the court either denying the motion or holding its ruling in abeyance. The April 10, 2025, order denied petitioners' request for relief from the Summary Judgment and Motions orders. Respondents filed a response.[2] Petitioners filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

---

[1] Bishop Brennan is the present Bishop of the Diocese. According to the Summary Judgment Order, Bishop Brennan was added to the litigation as nominal party on February 8, 2022, due to his ecclesial capacity as a successor to prior Diocese bishops.

[2] Petitioners are represented by Charles J. Crooks, Esq. Respondents are represented by James C. Gardill, Esq., Richard N. Beaver, Esq., Edward M. George III, Esq., Brent P. Copenhaver, Esq., and Timothy R. Linkous, Esq.

1

This case centers on John C.[3] and Mr. Spencer who were undisputedly switched at birth. The circuit court found that the following facts are not in dispute.

John C. and Mr. Spencer were both born on August 29, 1942, at St. Joseph's Hospital ("Hospital") in Buckhannon, West Virginia. According to John C.'s birth certificate, he was born at 5:30 p.m. and delivered by Dr. R.G. Cutright. Mr. Spencer was born at 7:50 p.m. and delivered by Dr. L.W. Deeds. Following their births, John C. and Mr. Spencer were misidentified at the Hospital and subsequently discharged with the wrong birth mothers. This mistake was first discovered in July of 2019 when Mr. Spencer received his results from a mail-order ancestral DNA testing kit. Thereafter, Mr. Spencer located John C. who submitted to similar testing in August of 2019, and the results confirmed that the gentlemen were switched at birth.

The Hospital was established as a charitable hospital in 1921 by a small group of German nuns ("Sisters") who belonged to an order known as the Pallottine Missionary Society, an autonomous order devoted to the Catholic faith. To establish the Hospital, the Sisters purchased property from the Barlow family in 1921 with a mansion on the property serving as the Hospital. The Sisters' purchase was financed by a loan from the Diocese. To that end, on February 15, 1921, the Barlow family executed a deed of trust conveying the property to Bishop Patrick J. Donahue as trustee (collectively the "Barlow Deed"). The Diocese and the Sisters executed a loan agreement regarding the Sisters' payment of principal and interest on the loan, which the Sisters paid in full in April of 1945 ("Diocese Loan"). Thereafter, Bishop John J. Swint, in his capacity as successor bishop and trustee, executed a deed transferring ownership of the Hospital property from the Diocese to the Sisters ("Hospital Deed"). According to the record, petitioners acknowledged below that the Sisters were autonomous of Bishop Donahue and successor bishops.

The Sisters owned, operated, controlled, and managed the Hospital from 1921 until they sold the Hospital to West Virginia United Health Systems, Inc., in 2015. In 1932, the Sisters organized and registered with the State as a non-profit corporation known as the Sisters of the Pallottine Missionary Society, which according to its articles of incorporation, provided for a board of directors and stated that the corporation was formed:

> To conduct and cause to be conducted under supervised control, suitable homes, hospitals, orphanages, nurseries, asylums, schools and colleges for men, women and children; and to conduct and cause the same to be conducted, as well as other places of shelter and support, for aged and infirmed persons, orphaned, crippled and helpless children, and others whose

_____

[3] Consistent with our practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in the case. *See* W. Va. R. App. P. 40(e)(1); *In re M.W.*, 252 W. Va. 548, ___ n.1, 923 S.E.2d 666, 667 n.1 (Ct. App. 2025).

2

condition in life from whatever cause render them objects of charity and benevolence.

Notably, the circuit court observed that the articles of incorporation did not mention the Diocese and did not otherwise indicate that the Diocese or anyone associated therewith had any authority or control over the Sisters or the Hospital.

Petitioners filed their original complaint against the Diocese on June 5, 2020. An amended complaint was filed on September 14, 2020, and was followed by a second amended complaint on September 19, 2022. The second amended complaint sought compensatory and punitive damages from the Diocese based upon a claim of negligence. It also asserted marital and spousal consortium claims on behalf of Bonnie C. and Phyllis Ann Spencer, and included a derivative consortium claim for Z.S.C.

The heart of petitioners' case, however, was their negligence claim against the Diocese based upon the evidentiary doctrine of *res ipsa loquitur*. Central to this claim, petitioners alleged that the Hospital's obstetrics and nursing staffs, who were at all times under the exclusive control and management of the Hospital, were responsible for delivering and attending to John C. and Mr. Spencer after their births, and as a result, the only plausible explanation for facts giving rise to this case was that the obstetrics and nursing staffs "negligently and in breach of their institutional and individual duties, physically mishandled and switched the aforesaid male newborn infants and sent them home with each other's families[.]" Therefore, according to petitioners, the switch of John C. and Mr. Spencer would not have occurred in the ordinary course of business had the Hospital's obstetrics and nursing staffs "used due care in the handling of these newborn babies, *res ipsa loquitur*." Relying on the same grounds, petitioners further claimed that the Diocese's purported negligence resulted in actionable fraud because the switch resulted in John C. and Mr. Spencer receiving birth certificates containing "false and misleading statements of fact" regarding their true identities and biological parents.

In an effort to attach negligence liability to the Diocese, the second amended complaint relied upon the theories of civil conspiracy and ostensible agency.[4][5] Particularly, petitioners' civil conspiracy claim was premised on their contention that the Hospital was illegally established in 1921, the Sisters were unlawfully incorporated in 1932, and the

---

[4] The term "ostensible agency" is synonymous with the term "apparent agency." *See Burless v. W. Va. Univ. Hosps., Inc.*, 215 W. Va. 765, 772 n.7, 601 S.E.2d 85, 92 n.7 (2004) (noting that the terms "ostensible agency" and "apparent agency" are not distinctive and are commonly used interchangeably).

[5] The circuit court's Summary Judgment Order stated that this was a notable shift from petitioners' earlier complaints, which focused on master-servant and agency liability theories.

Hospital was still operated illegally at the time of John C.'s and Mr. Spencer's births in 1942. Thus, petitioners maintained that the Hospital's establishment was the result of a civil conspiracy between Bishop Donahue and the Sisters who conspired to form and operate the Hospital in violation of several provisions of state code and canon law. Here, petitioners' arguments effectively sought to establish Diocese liability by invalidating the Barlow Deed, Diocese Loan, Hospital Deed, and the Sisters' establishment of the non-profit corporation.

Petitioners' ostensible agency theory sought to impose liability upon the Diocese based on the contention that the Hospital was presented to the local community as a Catholic hospital staffed with Catholic nuns, and therefore, community members who sought Hospital care had no reason not to believe that the Diocese was responsible for the care being provided. As such, petitioners asserted that the Sisters and all other Hospital staff were ostensible agents of the Diocese.

Following discovery, the parties filed several motions for summary judgment. The circuit court heard these motions on February 22, 2024, and entered the Summary Judgment Order[6] on December 26, 2024, disposing of all motions in favor of the Diocese and against petitioners. As it relates to this appeal, the court made the following pertinent summary judgment determinations.

The circuit court determined that petitioners had failed to set forth sufficient direct or circumstantial evidence to establish a prima facie negligence claim, emphasizing that their evidence of duty, breach, and causation was purely speculative and without any factual foundation. Particularly, the court noted that petitioners' second amended complaint alleges that John C. and Mr. Spencer were negligently misidentified based upon a litany of unknown facts—a point that is not disputed by the parties. For example, the court observed that that the parties do not dispute that it is factually unknown when or where the switch occurred within the Hospital, and it is also unknown whether the act was committed by a nurse or nun employed by the Hospital, or some other third party not affiliated with the Hospital, such as the private practice physicians who delivered John C.

---

[6] The circuit court's order addressed the following summary judgment motions: (1) Plaintiffs' Renewed Motion for Partial Summary Judgment; (2) Defendants' Motion for Summary Judgment on Real Estate Issues and Opposition to Plaintiffs' Original Motion for Summary Judgment; (3) Defendants' Motion for Summary Judgment on Issue of Civil Conspiracy; (4) Defendants' Motion for Summary Judgment on Issue of Liability for the Sisters of the Pallottine; (5) Defendants' Motion for Summary Judgment on Plaintiffs' Claim For Award of Punitive Damages; (6) Defendants' Motion for Partial Summary Judgment as to Plaintiffs' Claim for Loss of Marital Consortium; and (7) Defendants' Motion for Summary Judgment Based on Lack of Competent, Reliable, and Relevant Expert Testimony to Support Plaintiffs' Theory of Negligence.

and Mr. Spencer. The court further noted the absence of certain essential records and documents in the record surrounding John C.'s and Mr. Spencer's births, such as labor and delivery records, newborn records, hospital staffing schedules, and photos or blueprints of the Hospital as it existed in August of 1942. In a parallel observation, the court noted that it was undisputed that there are no living witnesses who would possess direct knowledge and insight about the Hospital's maternity ward and nursery in August of 1942. The circuit court found that these missing facts were relevant to establishing a viable negligence claim in this case, and without them, respondents were entitled to summary judgment on the issue of negligence.

The circuit court also rejected petitioners' civil conspiracy claim for multiple reasons. Notably, the circuit court concluded that petitioners lack standing to challenge the Barlow Deed, Diocese Loan, Hospital Deed, or the Sisters' incorporation. It further determined that the Barlow Deed was not executed in violation of state law, and therefore, petitioners could not rely upon it to invalidate the Hospital Deed or other instruments in the chain of title. The court additionally found that the Sisters were lawfully incorporated as a non-profit corporation. Thus, petitioners could not rely upon those points to establish civil conspiracy in this case.[7]

Additionally, the court found that petitioners did not produce sufficient evidence to withstand respondents' request for summary judgment on civil conspiracy. On this issue, the court turned its attention to the elements for civil conspiracy and noted Syllabus Points 8 and 9 of *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009), which state:

8. A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff.

9. A civil conspiracy is not a *per se*, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s).

*Id.* at 47, 689 S.E.2d at 259, syl. pts. 8 and 9; *see also Jane Doe-1 v. Corp. of President of The Church of Jesus Christ of Latter-day Saints*, 239 W. Va. 428, 461, 801 S.E.2d 443, 476 (2017) (citation modified) ("A civil conspiracy claim must produce at least

---

[7] In its order, the circuit court provided a detailed analysis to support these determinations. However, because the Court is disposing of this appeal on other grounds, it is unnecessary to delve into the specifics of the circuit court's analysis on these issues.

circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective and mutual agreement[.]"). The circuit court also recognized:

> A conspiracy may produce one or more torts. If it does, then every conspirator is liable for that tort, including a conspirator who promoted but did not commit the tort. A conspiracy is not, itself, a tort. It is the tort, and each tort, not the conspiracy, that is actionable.

*Dunn* at 57, 689 S.E.2d at 269.

Applying these principles, the circuit court reiterated that petitioners did not have a feasible negligence claim. Additionally, it determined that petitioners had not produced any evidence to support the existence of a civil conspiracy between the alleged conspirators, the Diocese and Sisters. Particularly, the court found that petitioners had not offered any evidence denoting a common plan or concerted action between the Diocese and Sisters to commit the alleged tort in this case. Also, there was no allegation or evidence that the alleged conspirators promoted or were otherwise aware that the negligent act occurred. Similarly, it was noted that the record lacked any evidence establishing how, when, and where the alleged act occurred within the Hospital, let alone who committed the act. As such, the court concluded that petitioners could not establish that a conspiracy existed at the time John C. and Mr. Spencer were born and switched at the Hospital.

Also included within the circuit court's analysis was an express rejection of petitioners' reliance on the doctrine of *res ipsa loquitur* to prove negligence in this case. Addressing this issue, the circuit court noted:

> The doctrine of *res ipsa loquitur* cannot be invoked where the existence of negligence is wholly a matter of conjecture and the circumstances are not proved, but must themselves be presumed, or when it may be inferred that there was no negligence on the part of the defendant. The doctrine applies only in cases where defendant's negligence is the only inference that can reasonably and legitimately be drawn from the circumstances.

Syl. Pt. 2, *Neary v. Charleston Area Med. Ctr., Inc.*, 194 W. Va. 329, 460 S.E.2d 464 (1995) (citation modified). Here, the court noted its prior findings regarding the speculative nature of petitioners' negligence and civil conspiracy claims and additionally found that the doctrine was unavailable to petitioners based upon the deposition testimony of their own expert. On this point, the circuit found that petitioners' nursing history expert, Arlene Keeling, PhD, R.N. ("Dr. Keeling"), stated in her deposition that it was plausible that the negligent act in this case was committed by the private practice physicians who delivered John C. and Mr. Spencer, rather than a nurse or nun employed by the Hospital. As a result, the court reasoned that because more than one inference could be drawn in this case, petitioners could not use *res ipsa loquitur* to prove their negligence claim.

6

Next, the circuit court addressed petitioners' reliance on ostensible agency principles to establish the Diocese's liability for the purported negligence of the Hospital or Sisters. The court found that petitioners had failed to withstand summary judgment on this issue and had not met their burden of establishing the existence of an agency relationship between respondents and the Hospital or Sisters. Here, the court found that petitioners' entire effort to resist respondents' related summary judgment motion consisted of a two-page response and two articles from the local newspaper on February 17, 1921, and March 28, 1921, about the establishment and opening of the Hospital. The court found that the articles were irrelevant for the purposes of the agency analysis herein, and that petitioners had failed to produce any evidence demonstrating the elements of an agency relationship.[8]

The circuit court also found that respondents were entitled to summary judgment on petitioners' consortium and fraud claims. The court found that Bonnie C.'s and Mrs. Spencer's loss of marital consortium claims failed because the purported injury (negligent misidentification) occurred prior to the marriage. *See Booth v. Baltimore & O.R. Co.*, 77 W. Va. 100, 102-03, 87 S.E. 84, 85 (1915) (holding that a husband could not maintain a loss of marital consortium claim for injuries that occurred to his wife prior to the couple's marriage). The court also determined that Z.S.C.'s derivative consortium could not survive summary judgment, finding that due to his severe cognitive impairment, there was no evidence that Z.S.C. was negatively impacted by John C.'s alleged injury, and that petitioners made no discernible effort to oppose summary judgment on this issue. As a final matter, the court found it appropriate to grant respondents summary judgment on petitioners' fraud claim concerning John C.'s and Mr. Spencer's birth certificates. Specifically, the court found that petitioners had not established a genuine issue of material fact on this issue because there was no evidence connecting respondents to the creation, issuance, or filing of the birth certificates, and Dr. Keeling testified in her deposition that there was no evidence of concealment regarding the birth certificates.[9] Upon granting respondents summary judgment, the Summary Judgment Order dismissed the case with prejudice.

Also subject to this appeal is the circuit court's Motions Order, which was entered on the same day as the Summary Judgment Order. As previously noted, this order addressed three motions to compel and four motions for judicial notice filed by petitioners, which were heard by the court on February 22, 2024. To that end, the court denied two of the motions to compel. Namely, the court denied petitioners' motion to compel the production of all notes made by a forensic psychiatry expert who was initially retained by

---

[8] *See* n.7, supra.

[9] The circuit court also granted respondents summary judgment on petitioners' punitive damages claim. However, the Court does not need to address that ruling to dispose of this appeal.

7

respondents and evaluated John C. and Mr. Spencer between May and June of 2022 before respondents withdrew him as a trial expert in July of 2022. In denying the motion, the court noted that petitioners never served a request for production of documents seeking the subject notes and because respondents withdrew the expert, the notes could not be authenticated at trial, were irrelevant, and could not be used by petitioners to bolster the opinions of their own forensic expert. The court also denied petitioners' motion to compel respondents to compensate one of petitioners' expert witnesses for the time he spent reviewing and correcting the transcript of his deposition. The court found that contrary to petitioners' contention, the applicable provisions of the West Virginia Rules of Civil Procedure did not contemplate such relief. *See* W. Va. R. Civ. P. 26(b)(4)(C)(i) (1998).[10] Petitioners' final motion to compel sought the production of documents related to certain requests for production, and the court deferred its ruling on the matter.

The Motions Order addressed the court's rulings regarding petitioners' motions for judicial notice in short form. Notably, the court found that petitioners sought judicial notice of certain adjudicative facts that were either not appropriate for judicial notice or were facts that the parties could elect to jointly stipulate to for trial. As a result, petitioners' judicial notice motions were either denied or held in abeyance, pending the parties' agreement on stipulated facts.

The final order on appeal was entered on April 10, 2025, and addressed petitioners' January 13, 2025, motion for relief from the court's Summary Judgment Order and Motions Order, which petitioners framed as "interlocutory."[11] The court denied the motion and

---

[10] This rule formed the basis of petitioners' motion, and it states: "Unless manifest injustice would result: The court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivisions (b)(4)(A)(ii) and (b)(4)(B) of this rule[.]"

Further, we cite to the former version of the rule because it was in effect when the circuit court ruled on the motion. We note that according to the recent 2025 amendments, this rule has been renumbered. *See* W. Va. R. Civ. P. 26(b)(4)(E)(i).

[11] In this Court's May 22, 2025, order refusing respondents' motion to dismiss this appeal, we construed this motion as a Rule 59(e) motion to alter or amend the December 26, 2024, Summary Judgment Order, because it was filed on the applicable deadline for filing a Rule 59(e) motion. *See* Syl. Pt. 1, *Lieving v. Hadley*, 188 W. Va. 197, 423 S.E.2d 600 (1992) ("A motion to amend or alter judgment, even though it is incorrectly denominated as a motion to 'reconsider', 'vacate', 'set aside', or 'reargue' is a Rule 59(e) motion if filed and served within ten days of entry of judgment."); *see also* Syl. Pt. 2, *Powderidge Unit Owners Ass'n v. Highland Props., Ltd.*, 196 W. Va. 692, 474 S.E.2d 872 (1996) (explaining that "[w]hen a party filing a motion for reconsideration does not indicate under which West Virginia Rule of Civil Procedure it is filing the motion," but it is filed

8

explicitly stated that its rulings were not interlocutory, but rather, the Summary Judgment Order expressly ruled on the remaining dispositive issues and dismissed the case with prejudice; therefore, the court's ruling was final and appealable. Petitioners' appeal of these three orders followed.

While petitioners present three orders on appeal, each with different governing standards of review, the Court finds that it can adequately resolve this matter by limiting its discussion to the findings of fact and conclusions of law contained in the Summary Judgment Order because it represents an adjudication of the entire case on the merits.[12] As such, this Court will not address the merits of the remaining orders on appeal in this decision. Accordingly, we turn our attention to the Summary Judgment Order.

To that end, it is well established in West Virginia that our standard of review for summary judgment rulings is de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."). In conducting a de novo review, this Court applies the same standard for granting summary judgment that a circuit court must apply, and that standard states, "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *Id.* at 190, 451 S.E.2d at 756, syl. pt. 2 (citation modified). "Summary judgment is appropriate if, from the totality of the evidence presented . . . the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995). "The party opposing summary judgment must satisfy the burden of proof by offering more than a mere scintilla of evidence and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Id.* at 60, 459 S.E.2d at 337 (citation modified).

---

within the timeframe for filing a Rule 59(e) motion, it will be construed as a Rule 59(e) motion to alter or amend). Despite this ruling, respondents argue in their brief that petitioners' January 13, 2025, motion was not a Rule 59(e) motion, relying on *Malone v. Potomac Highlands Airport Auth.*, 237 W. Va. 235, 786 S.E.2d 594 (2015). While it is true that in *Malone* the Supreme Court of Appeals sharply criticized the continued practice by litigants of filing "rogue" motions for reconsideration, the Court declined to overrule *Powderidge* and *Lieving*, and recharacterized the undefined motion at issue in that case as a Rule 59(e) motion. *See Malone v. Potomac Highlands Airport Auth.*, 237 W. Va. 235, 239-40, 786 S.E.2d 594, 598-99 (2015).

[12] We note that petitioners initially challenged the finality of the Summary Judgment Order on appeal; however, in their reply brief, they acknowledged that the order was indeed final and appealable and withdrew their challenge to its finality and the merits of the April 10, 2025, order.

9

With respect to this order, petitioners offer several arguments, the totality of which essentially challenges every summary judgment determination made by the circuit court. For example, petitioners argue that the court erred when it did not rule in their favor regarding the validity of the Barlow Deed, Diocese Loan, Hospital Deed, and the Sisters' incorporation. They also alleged error with respect to the court's rulings regarding civil conspiracy, ostensible agency, negligence, and *res ipsa loquitur*. However, upon review, the Court finds that the circuit court's rulings regarding the underlying negligence claim and *res ipsa loquitur* are dispositive of the entire case, and as a result, resolution of petitioners' remaining summary judgment arguments is unnecessary.

On appeal, petitioners generally contend that the circuit court erred on these two issues and argue that they produced sufficient circumstantial evidence to establish a prima facie negligence cause of action through application of the doctrine of *res ipsa loquitur*. We disagree with petitioners on these points.

In reaching this conclusion, we first observe that with negligence claims, it is well established: "In order to establish a prima facie case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." Syl. Pt. 2, *Kruse v. Farid*, 242 W. Va. 299, 835 S.E.2d 163 (2019) (citation modified). It is further settled that this may be shown through direct or circumstantial evidence. *See Smith v. Edward M. Rude Carrier Corp.*, 151 W. Va. 322, 331-32, 151 S.E.2d 738, 744 (1966) (collecting cases). However, the circumstantial evidence must be credible. *See Smith* at 322, 151 S.E.2d at 738, syl. pt. 3.

Here, it is undisputed that petitioners sought to establish a prima facie negligence claim by using circumstantial evidence and the doctrine of *res ipsa loquitur*. In that regard, in addition to the circuit court's observation from *Neary*, we observe the following:

> Pursuant to the evidentiary rule of *res ipsa loquitur*, it may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when (a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

Syl. Pt. 4, *Foster v. City of Keyser*, 202 W. Va. 1, 501 S.E.2d 165 (1997). However, from an evidentiary perspective,

> a plaintiff seeking to apply the doctrine of *res ipsa loquitur* is required to demonstrate that the evidence he or she intends to present is circumstantial evidence that will lead to reasonable inferences by the jury, and is not simply

10

evidence which would force the jury to speculate in order to reach its conclusion.

Syl. Pt. 4, *Kyle v. Dana Transport, Inc.*, 220 W. Va. 714, 649 S.E.2d 287 (2007) (citation modified).

Moreover, as it directly relates to this appeal:

In order to avoid summary judgment or judgment as a matter of law, a plaintiff who seeks to proceed on a theory of *res ipsa loquitur* must demonstrate each of the three prongs of the test this Court adopted in syllabus point four of *Foster v. City of Keyser*, 202 W.Va. 1, 501 S.E.2d 165 (1997), as a predicate to application of the evidentiary rule of *res ipsa loquitur*.

*Kyle* at 716, 649 S.E.2d at 289, syl. pt. 6.

Applying those principles here, we cannot conclude that circuit court erred in its determination that petitioners failed to overcome respondents' motions for summary judgment on these issues. In its order, the circuit court set forth factual findings, established precedent, and statutory authority applicable to the legal issues presented. After reconciling the matter, the court determined that respondents established that there were no genuine issues of material fact. Subsequently, the burden shifted to petitioners to oppose summary judgment through more than a *mere scintilla of evidence*. To meet this burden, our state's highest court has stated:

If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)[13] of the West Virginia Rules of Civil Procedure.

*Williams*, 194 W. Va. at 56, 459 S.E.2d at 333, syl. pt. 3. The nonmoving party must also present *evidence* that contradicts the showing of the moving party by pointing to specific facts demonstrating that there is a trialworthy issue which is not only a genuine issue but also an issue that involves a material fact. *Id.* at 60, 459 S.E.2d at 337 (emphasis added). Moreover, the nonmoving party cannot create a genuine issue of material fact through mere speculation or building of one inference upon another. *Id.* at 61 n.14, 459 S.E.2d at 338 n.14.

---

[13] We note that under the 2025 amendments to the West Virginia Rules of Civil Procedure, the former Rule 56(f) has been renumbered as Rule 56(d).

Accordingly, to withstand summary judgment, petitioners were required to either rehabilitate the evidence, produce additional evidence showing a genuine issue of material fact, or file an affidavit for further discovery. The record plainly shows that they failed to do so. Specifically, there is no affidavit in the record from petitioners seeking further discovery, and their responses to respondents' summary judgment motions neither rehabilitate the evidence nor produce additional evidence to sufficiently establish a genuine issue of material fact.

Rather, to establish error on appeal, petitioners merely contend that their evidence is sound, and that the circuit court did not give it the credence it deserved. We find that this argument misses the mark. Precedent establishes that summary judgment is appropriate where an opposing party's evidence involves unsupported speculation, is merely colorable, or not significantly probative. *Williams*, 194 W. Va. at 61, 459 S.E.2d at 338 (collecting cases). Upon review, we find no error with the circuit court's observation that no reasonable inferences could be drawn from petitioners' evidence because their entire case was speculative, and suffered from a lack of witnesses, documentation, and credible evidence to prove events that occurred over eighty years prior. Further, nothing in the record establishes that petitioners pointed to specific facts demonstrating the existence of a trialworthy issue. *Id.* at 60, 459 S.E.2d at 337 ("A 'trialworthy' issue requires not only a 'genuine' issue but also an issue that involves a 'material' fact.").

We also find no error in the circuit court's determination that petitioners could not rely upon the doctrine of *res ipsa loquitur*. To that end, we note that in *Bronz v. St. Jude's Hospital Clinic*, 184 W. Va. 594, 402 S.E.2d 263 (1991), our state's highest court held:

> In making general allegations of fault, stated without support, a party cannot avoid summary judgment merely because the doctrine of *res ipsa loquitur* is invoked. The plaintiff must still produce evidence to establish the existence of a genuine issue of material fact for a *res ipsa loquitur* case to survive.

*Bronz* at 595, 402 S.E.2d at 264, syl. pt. 6. As previously established, petitioners failed to establish a prima facie negligence claim. Accordingly, for those same reasons, petitioners cannot rely upon *res ipsa loquitur* to evade the circuit court's entry of summary judgment in this case.

Lastly, the circuit court made an additional determination that petitioners' *res ipsa loquitur* case could not survive because Dr. Keeling acknowledged at deposition that someone other than a Hospital employee could have switched the infants. On appeal, petitioners argue that the circuit court leaned too heavily on this fact to support its ruling.[14]

---

[14] On this point, petitioners maintain that while Dr. Keeling posited that there was approximately a five percent chance this occurred, it is immaterial because she was "badgered" into stating so by opposing counsel, and she subsequently changed her

However, other than touching on their disagreement with the circuit court on this issue in passing, petitioners offer no substantive authority or argument to circumvent the court's ruling or reliance upon *Neary*. Thus, petitioners have not preserved this argument on appeal, and it will not be considered. *See State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation modified) ("A skeletal argument, really nothing more than an assertion, does not preserve a claim."); *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal."); W. Va. R. App. P. 10(c)(7) ("The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Intermediate Court . . . may disregard errors that are not adequately supported by specific references to the record on appeal.").[15]

Based on the foregoing, we conclude that petitioners failed to set forth a prima facie negligence claim. Further, because every remaining claim and theory of recovery in the second amended complaint is dependent upon the existence of a negligence claim, we conclude that the circuit court did not err in its determination that entry of summary judgment and dismissal of petitioners' entire case was appropriate. Therefore, we affirm the court's December 26, 2024, and April 10, 2025, orders presented on appeal.

Accordingly, we affirm.

Affirmed.

**ISSUED:** May 1, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

---

testimony on cross-examination to reflect that she was 100% confident that a Hospital employee committed the negligent act. As set forth above, this does not establish error by the circuit court on this issue.

[15] We also find that petitioners offered a skeletal argument regarding the circuit court's determination on their fraud claim surrounding John C.'s and Mr. Spencer's birth certificates. As such, it will not be considered.

13